No. 99,757

In the Matter of the Care and Treatment of RANDY SPORN.

(215 P.3d 615)

Opinion filed September 18, 2009.

*Marc Bennett*, special assistant attorney general, was on the brief for the appellant.

*Gregory K. Barker*, of Wichita, was on the brief for the appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State appeals the district court's dismissal of its petition filed against Randy Sporn, pursuant to K.S.A. 59-29a01 *et seq.*, the Sexually Violent Predator Act (SVPA). The State claims that the district court misinterpreted the SVPA and erred in finding that the issue of whether Sporn was a sexually violent predator was res judicata. On the facts of this case, we affirm the dismissal.

In 1999, Sporn was sentenced to prison for his convictions of aggravated criminal sodomy, aggravated indecent liberties with a child, and indecent solicitation of a child in Case No. 96 CR 739. In August 2005, Sporn reached his prison release date but was detained further because the Kansas Attorney General (AG) commenced proceedings to have Sporn committed as a sexually violent predator under the SVPA. That case was designated Case No. 05 PR 0795. However, in May 2006, a jury found in favor of Sporn, *i.e.*, that Sporn was not a sexually violent predator under the SVPA.

Accordingly, the SVPA proceeding was terminated, and Sporn was released from prison for postrelease supervision.

The following year, in April 2007, Sporn violated certain conditions of his postrelease supervision, ostensibly viewing pornography and sexually explicit websites on his computer. After Sporn was returned to prison, the AG once again began the procedure for committing Sporn as a sexually violent predator, filing a SVPA petition, with the multidisciplinary team report attached, in July 2007. The assigned district court case number was 07 PR 0716. On July 18, 2007, Judge Clark V. Owens II apparently made the requisite probable cause finding to send Sporn to the Larned State Security Hospital for evaluation. Interestingly, the body of the journal entry in the record on appeal misidentifies the respondent as another individual. However, Sporn's attorney signed the journal entry and raises no issue about that discrepancy.

The matter was originally set for trial on September 10, 2007, before Judge Gregory L. Waller. Prior to that trial date, Sporn filed a motion to dismiss, claiming the matter had previously been litigated in his favor in Case No. 05 PR 0795 and a retrial was barred by res judicata. In the alternative, Sporn requested an order in limine precluding the State from introducing the same evidence or relitigating the same issues that were decided in the prior jury trial. The trial date was continued, as was a scheduled hearing on Sporn's motion. Ultimately, the motion hearing was conducted by Judge Terry L. Pullman on September 28, 2007.

Judge Pullman reviewed the definition of a sexually violent predator, contained in K.S.A. 59-29a02(a), noting that it must be a "person who's been convicted of or charged with a sexually violent offense." The court further noted that the first SVPA action in 2005 had relied upon the convictions in 96 CR 739 to meet the definition of sexually violent predator but that action had resulted in a jury verdict that Sporn was not a sexually violent predator. The court then reviewed the petitions which had been filed in the 2005 and the 2007 cases, finding them "almost identical with very few differences." One of the differences was an allegation in the 2007 petition that Sporn's mental abnormality was pedophilia, in contrast to the 2005 petition's allegation of paraphilia, which the State

had identified as a typographical error in the 2007 petition. However, the court found that the 2007 petition did not allege that Sporn had been convicted of or charged with a sexually violent crime after the favorable adjudication of the 2005 case. Therefore, the court opined:

"The request in both cases, the petition in both cases were to determine whether or not Mr. Sporn met the criteria of a sexually violent predator and ultimately seeking to have him committed accordingly if in fact he did meet the criteria of a sexually violent predator. I'm going to find that the 05 PR 795 case was an adjudication on the merits of that issue and that issue, notwithstanding the allegations of internet surfing and accessing pornographic material, while it might be a violation of probation, is not a conviction nor a charge of a new crime under the statute I've cited. I'm going to find res judicata applies."

Judge Pullman dismissed the case and ordered Sporn released from custody. Subsequently, the judge signed a written order of dismissal that was filed October 10, 2007, which contained the following finding:

"4. There is an identity in 05PR0795 and 07PR0716 in that they are the (1) the same parties, (2) the same cause of action, (3) the same things are sued for, (4) the same quality of person against whom the claim is made; and therefore the principles of 'Res Judicata' apply in this case."

The State filed a timely notice of appeal. The case was transferred to the Supreme Court pursuant to K.S.A. 20-3018(c). The State raises two issues on appeal. First, it contends that under the SVPA the sole predicate to filing a petition seeking sexually violent predator status is the respondent's pending release from confinement. Second, the State argues that res judicata's identical cause of action element was not met, because a person's mental status can change and the subsequent petition sought determination of Sporn's then current mental status in 2007.

## PREREQUISITE FOR CAUSE OF ACTION

The State argues that it is K.S.A. 59-29a03(a) which "sets forth the circumstances that trigger the operation of the [SVPA]." The parties agree that we have an unlimited review over this issue. "The interpretation of a statute is a question of law over which this court has unlimited review. An appellate court is not bound by the trial

court's interpretation." *LSF Franchise REO I v. Emporia Restaurants, Inc.*, 283 Kan. 13, 19, 152 P.3d 34 (2007).

K.S.A. 59-29a03(a)(1) provides, in relevant part:

"(a) When it appears that a person may meet the criteria of a sexually violent predator as defined in K.S.A. 59-29a02 and amendments thereto, the agency with jurisdiction shall give written notice of such to the attorney general and the multidisciplinary team established in subsection (d), 90 days prior to:

(1) The anticipated release from total confinement of a person who has been convicted of a sexually violent offense, except that in the case of persons who are returned to prison for no more than 90 days as a result of revocation of postrelease supervision, written notice shall be given as soon as practicable following the person's readmission to prison."

The State notes that the provision explicitly recognizes that the AG can seek determination of sexually violent predator status for eligible inmates whose postrelease supervision has been revoked for even less than 90 days. It contends that the district court's finding that the revocation must have been due to a new charge or conviction for a subsequent sexually violent offense is refuted by the absence of any language to that effect in K.S.A. 59-29a03(a)(1).

Rather, the State interprets the statute to mean that, for a person in Sporn's circumstances, "[a]ny revocation that led to re-incarceration and, consequent re-release from confinement, clearly sets into motion the Attorney General's ability to file the [subsequent SVPA] petition." According to the State, it is the impending release from prison which creates a cause of action under the SVPA. For support, the State points to *In re Care & Treatment of Johnson*, 32 Kan. App. 2d 525, 532, 85 P.3d 1252, *rev. denied* 278 Kan. 845 (2004), which stated that "[t]he authority to initiate a sexually violent predator commitment proceeding is based on the imminent release of any person 'serving a sentence or term of confinement.'"

However, *Johnson* was addressing the timing of the initiation of a sexually violent predator action, rather than the accrual of separate causes of action. The opinion reviewed the Kansas Sentencing Guidelines Act and opined that postrelease supervision "is a component of the underlying prison sentence." 32 Kan. App. 2d at 532. Accordingly, *Johnson* found that when a person is returned to prison for a postrelease supervision violation, he or she is in custody

"serving a sentence or term of confinement" as required by the definition of "[a]gency with jurisdiction" under K.S.A. 2000 Supp. 59-29a02(f). 32 Kan. App. 2d at 532. Thus, the opinion suggests that a SVPA action may be commenced at any time that a respondent is serving any part of the "complete sentence" which "includes the prison sentence, the maximum good time credit allowance and a period of postrelease supervision." 32 Kan. App. 2d at 532. It does not hold that while a respondent is serving that one complete sentence, he or she is subject to multiple prosecutions for separate and distinct causes of action, simply because there were separate terms of confinement. Even K.S.A. 59-29a03(a)(1), upon which the State relies, utilizes the term, "total confinement," suggesting but one procedure per complete sentence.

In its brief, the State appears to recognize that its position creates the successive litigation risk which the principle of res judicata is designed to prevent. It states: "One may question whether this leaves the door open to the limitless filing of petitions each time a sexually violent offender has his parole revoked for even minor or non-sexual violations." Interestingly, the State then suggests that such a flaw is overcome by the requirement that the petition "must still contain sufficient information to withstand a motion to dismiss based upon res judicata or claim preclusion." That statement contradicts the State's own argument under this issue. If the State is correct in arguing that, under K.S.A. 59-29a03(a)(1), impending release from prison triggers the right to file a new SVPA petition, then the 2007 petition represented a new cause of action. Consequently, a motion to dismiss based on res judicata grounds would be ineffectual to close the door on limitless filings of SVPA petitions. See *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002) (elements of res judicata require identity in cause of action).

Nevertheless, the State's argument attempts to expand upon the significance of the *notice* provision in K.S.A. 59-29a03(a)(1), while ignoring the first sentence: "When it appears that a person may meet the criteria of a sexually violent predator as defined in K.S.A. 59-29a02 and amendments thereto." The principal prerequisite for a SVPA cause of action is that the respondent must fall within the

criteria set forth in the definitions in K.S.A. 59-29a02. The notice provisions of K.S.A. 59-29a03(a)(1) simply govern when the commitment procedure may be commenced. Moreover, the legislature cautioned against ascribing too much importance to K.S.A. 59-29a03 by reciting that its provisions "are not jurisdictional" and that noncompliance "in no way prevents the attorney general from proceeding against a person otherwise subject to the provision of K.S.A. 59-29a01 *et seq.*" K.S.A. 59-29a03(f). If compliance with the provisions of K.S.A. 59-29a03 is not necessary for a SVPA action, then those provisions cannot "trigger" the right to file a SVPA petition.

## RES JUDICATA

The State also argues that the district court erred in applying the doctrine of res judicata. The applicability of res judicata or collateral estoppel is a question of law, subject to unlimited review. See *In re Johnson*, 32 Kan. App. 2d at 530.

The State relies on the three factors necessary to apply the doctrine of res judicata cited in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 397-98, 949 P.2d 602 (1997), *cert. denied* 525 U.S. 831 (1998). We note, however, that *Stanfield* was applying federal law. 263 Kan. at 396 ("Thus, while Kansas law does not appear to differ significantly from the federal law regarding the preclusion doctrines, the controlling authority in this case is federal law."). Kansas law states four requirements; res judicata prevents relitigation where the following requirements are met: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made. *Waterview Resolution Corp.*, 274 Kan. at 1023; see *Kumberg v. Kumberg*, 232 Kan. 692, 703, 659 P.2d 823 (1983). Nevertheless, the State's contention is that the two cases did not share the same cause of action, which would be fatal to a res judicata claim under either standard.

The State first notes that the critical question to be answered in a SPVA action is whether the respondent has a mental abnormality or personality disorder which would make the respondent likely to engage in repeat acts of sexual violence. It then contends that the

determination presents a "fluid issue subject to change over time," because a person's condition can improve or deteriorate. Accordingly, the State concludes that the recidivism risk determination is to be based on the respondent's current condition at the time of the SPVA proceedings. Therefore, the cause of action against Sporn in 2007 to determine his then current condition was different than the cause of action to assess his condition in 2005.

In support of its creative argument, the State points to *Kansas v. Hendricks*, 521 U.S. 346, 138 L. Ed. 2d 501, 117 S. Ct. 2072 (1997), where the United States Supreme Court held that the Kansas SVPA was constitutional. *Hendricks* found that the SVPA was not punitive, in part because one of the stated purposes of the commitment was to hold the person until his or her mental abnormality no longer causes him or her to be a threat to others. 521 U.S. at 363. The State argues that *Hendricks* recognized that a respondent's mental status and risk assessment is subject to improvement. Otherwise, a committed person could never be released. Apparently, the State intimates that the converse must be true, *i.e.*, the respondent's mental status and risk assessment can deteriorate and thus give rise to a new and different cause of action.

However, the State does not assert that the passage of time, standing alone, will create a new cause of action. Its brief phrased the constraint as follows:

"Res Judicata would arguably bar the re-filing of a petition when no change has occurred to a respondent's mental status or risk assessment since the previous petition. The basis for the revocation of a respondent's post-release—be it a positive urinalysis, failure to report or, perhaps, failure to control sexually deviant cycles—may or may not be material. *The sole issue is whether the individual's mental status and, consequent risk, have changed since the last petition for any reason. If they have not, no new issue is presented and res judicata is properly invoked to bar the proceeding.* However, if, as was the case in the instant matter, these considerations have changed, res judicata presents no legal barrier to continued pursuit of the petition." (Emphasis added.)

As we have suggested, the language of the SVPA could be interpreted to authorize one commitment proceeding during the pendency of the "complete sentence" for a sexually violent offense. For example, K.S.A. 59-29a03(a)(1) speaks to "[t]he anticipated

release from total confinement of a person who has been convicted of a sexually violent offense." On the other hand, there is support to be found for the State's position in a California case, albeit the State did not cite to it.

In *Turner v. Superior Court*, 105 Cal. App. 4th 1046, 130 Cal. Rptr. 2d 300 (2003), the court addressed whether the State could file successive sexually violent predator petitions based on the same sexually violent offense. *Turner* reasoned:

"The likelihood of a person committing criminal acts because of a mental disorder is not a fixed condition because an individual's mental health and potential dangerousness can, and frequently does, change. [Citations omitted.] Recognizing this, courts generally hold that an adjudication of status or mental health issues is not conclusive as to the same status on a later date. [Citations omitted.]" 105 Cal. App. 4th at 1058-59.

However, *Turner* held that the jury's prior determination that the respondent was not a sexually violent predator was relevant and admissible in the later proceeding. Moreover, the California court instructed that in order to establish probable cause in a subsequent proceeding under the Act, the district attorney must present evidence of a change in circumstances, in other words, show evidence that the circumstances have materially changed so that the offender now possesses the requisite dangerousness. A mental health professional may still fully evaluate the background/historical information when rendering his or her opinion. However, the professional cannot rely solely on the historical information and must explain what has occurred in the interim to justify the conclusion that the individual is currently a sexually violent predator. 105 Cal. App. 4th at 1059-60. In *Turner*, the court found that the prosecution had not met its burden of showing that the facts were sufficiently different to permit relitigation. 105 Cal. App. 4th at 1061-63.

Similarly, here, the State failed to carry its burden of establishing that Sporn's mental status and risk assessment materially changed in the interim between the 2005 and 2007 SVPA proceedings. In the first instance, according to the unchallenged finding of the district court, the State filed nearly identical petitions in both cases. Although we do not have the first petition in the record on appeal,

we note that the 2007 petition makes no allegation that Sporn's mental status or recidivism risk had materially changed since his 2005 favorable jury verdict. K.S.A. 59-29a04(a) provides that the petition, in addition to alleging that the respondent is a sexually violent predator, is to state "sufficient facts to support such allegation." Therefore, on its face, the 2007 petition was insufficient to survive dismissal.

Further, we are unpersuaded by the State's argument that the basis for revoking postrelease supervision—viewing pornography and sexually explicit websites on the computer—define a material change in Sporn's mental status. To the contrary, those facts appear to be offered simply to shore up or corroborate the previous diagnosis and risk assessment, with the hope that a second jury would reach a different result on the same underlying evidence. That is precisely what the principle of res judicata is designed to prevent.

Therefore, even if we accept the State's contention that a second petition for commitment under the SVPA is permitted where there has been a material change in the respondent's mental status and recidivism risk, the State failed to carry its burden of making an initial showing of such a material change. The district court was correct in dismissing the petition.

Affirmed.