(217 P.3d 1010)
No. 101,619

EDITH DIA, *Appellee*, v. MARVIN OAKLEY JR., *Appellant*.

Opinion filed October 23, 2009.

*Jeffrey N. Lowe*, *Douglas C. Cranmer*, and *Rick E. Hodge, Jr.*, of Stinson, Lasswell & Wilson, L.C., of Wichita, for appellant.

*Randy M. Barker*, of Kansas Department of SRS Child Support Enforcement, and *Lisa A. Long-Horton*, deputy court trustee, for appellee.

Before LEBEN, P.J., GREEN and MALONE, JJ.

LEBEN, J.: In 1999, Edith Dia, a resident of Germany, obtained a default paternity judgment and child-support award against Marvin Oakley Jr., a resident of Kansas. Oakley contends that he had no knowledge of the German lawsuit. In 2005, German authorities acting on Dia's behalf sent the German judgment to Kansas for registration under the Uniform Interstate Family Support Act, which courts and attorneys commonly refer to by its acronym, UIFSA. See UIFSA (1996), 9 (Pt. IB) U.L.A. 281 (2005); K.S.A. 23-9,101 *et seq.* Oakley was properly served with notice that the German judgment had been registered in Kansas and that its registration would be confirmed unless he contested it. He requested a hearing but failed to attend it, resulting in the confirmation of the order's registration here.

Legal rights are often lost by default, and Oakley lost significant rights when he failed to attend that hearing. Under UIFSA, Oakley had a right to challenge Kansas registration of the order on several grounds, including the challenge he now raises: that the German court had no jurisdiction over him. K.S.A. 23-9,607 specifically lists that challenge as an issue that may be raised in opposing a support order's confirmation. But once an order is confirmed and registered, K.S.A. 23-9,608 precludes further challenge in Kansas of the issues that could have been contested at that hearing. By failing to

attend the hearing, Oakley lost by default his right to challenge the German court's jurisdiction over him here in Kansas, where it would have been most convenient for him. Now, if Oakley has any remaining right to do so, he would need to pursue his claim that Germany lacked jurisdiction over him for the paternity judgment and child-support award through the German judicial system.

## Issues on Appeal and Standard of Review

Oakley asserts two issues on appeal. First, he claims that the district court should have allowed him to contest the German court's personal jurisdiction over him here in Kansas. Second, he claims that, under UIFSA, German support orders aren't even approved for registration in Kansas at all. Thus, Oakley claims that the purported registration of a German support order didn't confer subject-matter jurisdiction in the Kansas court system over that order. We will discuss each issue separately. For both arguments, we review only the legal issues involving the interpretation of the UIFSA statutes; there were no factual disputes significant to these issues. Accordingly, our review is without any required deference to the district court's statutory interpretation. See *In re Care & Treatment of Sporn*, 289 Kan. 681, 215 P.3d 615 (2009). In addition, the second issue raises a jurisdictional question; we also have unlimited review on jurisdictional issues. See *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 774, 148 P.3d 538 (2006).

## Factual Background

Dia obtained a default judgment against Oakley in Germany in 1999. The judgment declared that Oakley was the father of Dia's child and ordered Oakley to pay child support.

That judgment was registered in Sedgwick County in February 2005, and Oakley was personally served with notice of the registration. The notice included a form that Oakley could use to request a hearing to contest the registration; the form contained boxes he could check to claim various defenses to registration, including that the German court lacked jurisdiction over him. Oakley checked the box marked "Other" and wrote on a blank line by the

box: "Not my child want Blood Test." In response, the court set the matter for hearing, and Oakley appeared at a hearing on April 21, 2005.

In addition to Oakley, an attorney for the district court trustee's office, which enforces child-support orders, appeared at that hearing. According to the district court's order, Oakley contended at the hearing on April 21 that he didn't believe he was in Germany when the child was allegedly conceived but that he didn't have his military records with him. The court's hearing record shows that the matter was continued until June 30 " 'for info.,' " apparently to allow Oakley to bring his records.

Oakley didn't appear for the June 30 hearing; he suggests on appeal that he "innocently forgot to attend" it. In his absence, a hearing officer—and later a district judge—confirmed the registration of the German judgment and child-support order. The written order, which was filed August 26, 2005, provided that confirmation of the German order precluded any further challenge to it. A copy of the order was mailed to Oakley. The order told Oakley that he had a support arrearage of $32,429.60 as of December 31, 2004; the order required Oakley to pay $100 per month on the arrearage and $339.51 per month in current child support.

Oakley's next step came several months later. He filed a motion to set aside the registered order. That motion was set for hearing in January 2006. The matter was then continued to April 20, and the district court trustee's representative said that Oakley had been asked in the unrecorded hearing to bring his military records with him to the next hearing. On April 20, Oakley appeared again, but the hearing was continued to June 8, again to let Oakley get more information. On June 8, according to the district court's records, Oakley didn't appear, and his motion was dismissed. Oakley suggests on appeal that he was merely late for the hearing, but he has not cited to any evidence in the record to support that claim. See *Hawkins v. Dennis*, 258 Kan. 329, 342, 905 P.2d 678 (1995) (unsupported statements of counsel are not evidence of excusable neglect or good faith).

The next week, on June 14, Oakley filed another motion seeking to overturn registration of the German order. Later, an attorney

entered an appearance on Oakley's behalf and filed new motions to set aside the order confirming registration because the German court had never obtained personal jurisdiction over Oakley and to dismiss the German order because it didn't comply with Kansas law. Those motions were denied by a hearing officer and by the district court. The hearing officer concluded that because Oakley had failed to timely contest the German court's jurisdiction in the Kansas proceeding before the order's confirmation he could no longer do so here; the district court agreed. The hearing officer also concluded that German support orders may be registered in Kansas; the district court again agreed.

I. *The District Court Correctly Ruled that Oakley Lost the Chance to Litigate the Jurisdiction Issue in Kansas when He Failed to Raise the Issue in Kansas Before the German Judgment Was Registered and Confirmed Here.*

Oakley argues that the German court never had personal jurisdiction over him. But UIFSA sets up a procedural framework that determines where and when matters may be raised when enforcing support orders in different states and countries. Some compromise is needed when the parties do not live near each other; one or both might be required to litigate matters in a distant forum. So UIFSA has set up procedures under which a party who is owed support may obtain a support order in his or her own state (or country) and then register the order in the state of the party who is to pay that support. UIFSA provides that some, but not all, issues may then be raised in the payor's home forum but only when UIFSA procedures are followed.

The specific issue Oakley now seeks to raise—whether the German court ever had proper personal jurisdiction over him—may be raised in a UIFSA case. K.S.A. 23-9,607(a) provides a list of defenses that may be claimed by a party contesting the validity or enforcement of an order; the list includes the defense that "[t]he issuing tribunal lacked jurisdiction over the contesting party." But K.S.A. 23-9,607(c) provides that "[i]f the contesting party does not establish a defense under subsection (a) to the validity or enforce-

ment of the order, the registering tribunal shall issue an order confirming the order."

That's what happened here. Although Oakley asked for a hearing at which he could contest the validity of the order, he didn't attend that hearing. Thus, he certainly didn't establish a defense against its validity. Nor did he even assert the defense that the German court lacked jurisdiction, something he could have done by simply checking a box on the form sent to him with the registration—the same form he used to seek a hearing. So the district court properly confirmed the order's registration in Kansas, as required by K.S.A. 23-9,607(c), when Oakley failed to establish a defense to it.

Once an order's registration is confirmed, K.S.A. 23-9,608 "precludes further contest of the order with respect to any matter that could have been asserted at the time of registration." The issuing court's lack of jurisdiction is certainly a matter that could have been asserted as a defense at the time of registration since it's explicitly listed in K.S.A. 23-9,607(a)(1). So UIFSA clearly provides that Oakley may no longer raise that defense here in Kansas.

But why should this be the case? The statute seems clear enough, but if it makes no sense, perhaps we are missing something. A review of the statutory scheme confirms our reading of it and shows why the statute was constructed as it was.

UIFSA provides only a limited opportunity to challenge an order in the responding state because UIFSA represents a carefully considered compromise between the rights of two parents who live in different states. UIFSA replaced an earlier uniform statute for the enforcement of support obligations, the Uniform Reciprocal Enforcement of Support Act (which has an equally cumbersome acronym, URESA), K.S.A. 23-451 *et seq.*, repealed effective July 1, 1995. UIFSA's most important change was that responding states no longer had authority in most situations to modify support orders made in other jurisdictions. Thus, the parent in the responding case would generally have to go to the state in which the initial support order was made to seek modification. See *In re Marriage of Metz*, 31 Kan. App. 2d 623, 625, 69 P.3d 1128 (2003); UIFSA (1992), 9 (Pt. IB) U.L.A. 471, 474, 488 (2005) (Prefatory Note; Proposed Changes II.B [Establishing Support Order]; Comment

to UIFSA § 205 [1992]). As we have already noted, UIFSA did grant some explicit grounds on which a parent in the responding state could challenge the initial registration of an order. But unless the order was successfully challenged before its registration was confirmed, the general rule—requiring that challenges occur in the initiating state—controls under UIFSA. This was simply a conscious choice made in the process of drafting this legislation, and Kansas adopted the UIFSA provisions in 1994 in K.S.A. 23-9,101 *et seq.*; see L. 1994, ch. 301, secs. 32-83.

Oakley tries to avoid the impact of these UIFSA provisions by citing K.S.A. 60-260(b), a provision in the Kansas Code of Civil Procedure. Under K.S.A. 60-260(b), a motion to set aside a void judgment may be made at any time. See *Board of Jefferson County Comm'rs v. Adcox*, 35 Kan. App. 2d 628, 635-36, 132 P.3d 1004 (2006). And a judgment entered without personal jurisdiction over the defendant is a void judgment. Therefore, Oakley argues, he should be able to raise this issue now under K.S.A. 60-260(b) even if he didn't satisfy the specific requirements of UIFSA.

But a specific statute usually controls over a more general one. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 172 L. Ed. 2d 239 (2008). UIFSA sets out specific procedures for establishing and enforcing support obligations, while the Kansas Code of Civil Procedure provides general rules applicable to all civil cases. As we have already noted, UIFSA set up a carefully balanced system in which a parent seeking support might obtain an order in his or her home state (or country) and then enforce it in another state. UIFSA provides that the issuing state has continuing and exclusive jurisdiction over that order with limited exceptions. UIFSA specifically allows a challenge to the validity of the order in the responding state, but only before confirmation of the order's initial registration. *After* confirmation, the defenses listed in UIFSA—specifically including lack of jurisdiction—may no longer be raised in the responding state (here, Kansas) under K.S.A. 23-9,608. We conclude that the specific provision of K.S.A. 23-9,608 controls over the more general provision found in K.S.A. 60-260(b). See *Hale v. Hale*, 33 Kan. App. 2d 769, 771, 108 P.3d 1012 (2005) (finding that a specific UIFSA provision controlled

rather than one in the Kansas Code of Civil Procedure regarding when a support judgment became dormant).

Oakley argues that this is unconstitutional because he has a due-process right to challenge a void judgment. But his argument over-looks two key points. First, he *had* a chance to contest the validity of the judgment here in Kansas; he failed to take advantage of that opportunity. Second, even though he can no longer challenge the validity of the German judgment here in Kansas, he may yet be able to do so in Germany. We do not know what the law in Germany may say about whether Oakley may still challenge the validity of the judgment there several years after he learned of the judgment's existence, whatever the service issues may be. But UIFSA does nothing to prevent a party from litigating any matter regarding the underlying judgment in the issuing state. See 9 (Pt. IB) U.L.A. 511 (2005) (Comment to UIFSA 606 [1992]).

II. *The District Court Correctly Ruled that German Support Or-ders May Be Registered and Enforced in Kansas Under UIFSA.*

Oakley's second argument is that Germany is not a state as de-fined by UIFSA, so a German order cannot be registered and en-forced in Kansas. We must start our analysis with UIFSA's defi-nition of a state, which includes foreign countries with similar procedures for the enforcement of support orders:

"The term [state] includes:

. . . .

"(2) a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this act, the uniform reciprocal enforcement of support act or the revised uniform reciprocal enforcement of support act." K.S.A. 23-9,102(s)(2).

The district court trustee's office notes that the Kansas Attorney General issued a written declaration in 1992 finding that "recip-rocal provisions are available in the nation of the Federal Republic of Germany for the enforcement of child support and maintenance orders issued in the State of Kansas." Thus, the court trustee argues Germany is a state for UIFSA purposes.

Oakley makes two counterarguments. First, he points out that the United States Department of State has not certified that Ger-

many has support-enforcement provisions substantially in compliance with Title IV-D of the Social Security Act. See 42 U.S.C. 659a(a)(1) (2006); 73 Fed. Reg. 72555 (November 28, 2008) (listing countries certified by United States Secretary of State). Second, he notes that the Kansas Attorney General's declaration was made when Kansas law was governed by URESA, not UIFSA. Neither argument is persuasive.

First, the Secretary of State's certification of countries with adequate support-enforcement procedures under Title IV-D is only one route to reciprocal support enforcement, not the only way. Nothing in 42 U.S.C. section 659a indicates an intention to void existing state statutes through invocation of the Supremacy Clause of the United States Constitution. In fact, the federal statute recognizes the right of states to enter into reciprocal agreements for the establishment and enforcement of support orders for countries not certified by the Secretary of State "to the extent consistent with Federal law." 42 U.S.C. § 659a(d). We find no inconsistency between the UIFSA provision and 42 U.S.C. section 659a. See 73 Fed. Reg. 72555 (State Department declaration of reciprocating countries) ("The law also permits individual states of the United States to establish or continue existing reciprocating arrangements with foreign countries when there has been no Federal declaration. Many states have such arrangements with [such] additional countries . . . ."); Duncan, *The Development of the New Hague Convention on the International Recovery of Child Support and Other Forms of Family Maintenance*, 38 Fam. L.Q. 663, 674 (2004) ("[I]f a foreign country is determined under either federal or state law to be a 'reciprocating' country, it is treated as if it were a state of the United States for purposes of child support enforcement, and all of the procedures and enforcement mechanisms available under [T]itle IV-D and UIFSA for interstate cases are available for cases from that country.").

Second, it makes no difference that Kansas had URESA, not UIFSA, at the time the Kansas Attorney General declared Germany's support-enforcement sufficient to be considered reciprocal to those available in Kansas. When URESA was originally replaced by UIFSA, its drafters recognized that some states would do so

before others and that, if UIFSA and URESA weren't considered generally on par with one another, reciprocal enforcement even between *states* of the United States could have been affected. In order to avoid that result, UIFSA defined both "initiating state" and "responding state" to include ones that had adopted UIFSA *or* "a law or procedure substantially similar to this act, the uniform reciprocal enforcement of support act, or the revised uniform reciprocal enforcement of support act." See K.S.A. 23-9,101(g), (p). But the initial version of UIFSA lacked an explicit trigger for foreign countries to be able to function as a state could if it also had procedures similar to URESA. Instead, it recognized a foreign country as a state for purposes of UIFSA only if it had enforcement procedures "substantially similar to the procedures under this act." In other words, a foreign country could qualify as a state if its procedures were similar to UIFSA, but the statute omitted the qualifier for foreign countries that allowed states to qualify if they had procedures that were similar to earlier acts that otherwise shared the same goal of enforcing child-support orders. See K.S.A. 23-9,101(s) (Furse 1995); 9 (Pt. IB) U.L.A. 480-81 (UIFSA § 101[19] [1992]).

This omission was addressed when UIFSA was updated in 1996, 4 years after it was first passed. In the new version, UIFSA changed that provision to explicitly grant foreign countries the same qualifiers as other states in the United States: if a foreign country had procedures comparable either to UIFSA *or* URESA, then that country could qualify for reciprocal enforcement. See UIFSA (1996), 9 (Pt. IB) U.L.A. 308, 310 (2005) (UIFSA 101[19] [1996] and Comment). Kansas followed suit and adopted that provision in 1997, so Kansas law provides that a foreign country is treated as a state for UIFSA purposes if it has established support-enforcement procedures substantially similar to UIFSA or URESA. K.S.A. 23-9,102(s)(2), as amended in L. 1997, ch. 182, sec. 32. Moreover, even though UIFSA adopted some new procedures, its provisions have always been similar to URESA in allowing the effective pursuit of support enforcement for parties in different jurisdictions, as UIFSA itself has always recognized with regard to states of the United States. Thus, the Kansas Attorney General's 1992 deter-

mination that Germany had procedures sufficiently similar to Kansas' procedures under URESA remains sufficient under UIFSA unless the declaration has since been revoked or was subject to some automatic expiration, but the record does not support such a determination.

In 1992 and today, K.S.A. 23-4,101(a) authorizes the Kansas Attorney General to declare that a foreign country has sufficient child-support-enforcement procedures to have reciprocal enforcement of orders, and the statute also authorizes the attorney general to revoke such a declaration when appropriate:

> "If the attorney general finds that reciprocal provisions are available in a foreign nation . . . for the enforcement of support orders issued in this state, the attorney general may declare the foreign nation . . . to be a reciprocating state for the purpose of establishing or enforcing any duty of support. A declaration made pursuant to this subsection may be revoked by the attorney general." K.S.A. 23-4,101(a).

We would be adding to the statute if we invoked some automatic-expiration period for an attorney general's declaration. The statute already notes that the attorney general may revoke his or her declaration. Having covered revocation in some manner, it would be illogical to infer some other method for revocation.

We also note that when the Kansas Legislature enacted UIFSA, it deleted URESA from the Kansas statute books but left K.S.A. 23-4,101(a) in place. Thus, the legislature simultaneously (1) adopted UIFSA, which recognized that states still governed by URESA would be considered reciprocating states, and (2) left in place the authority already used by the attorney general to declare that other countries, like Germany, had procedures sufficiently comparable to the Kansas URESA procedures to be considered reciprocating states.

We note too that the district court trustee introduced into the record of this case pleadings in several other cases showing that enforcement of Kansas orders has taken place in Germany and that enforcement of German orders has taken place in Kansas. Kansas is the home base for many members of the United States Armed Forces. These soldiers and sailors often travel to Germany, where the United States also has significant military bases. If this pattern

of reciprocal enforcement is to be displaced, that's up to the attorney general or to the legislature.

The judgment of the district court is therefore affirmed.