NOT DESIGNATED FOR PUBLICATION

No. 112,978

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LAUREN ELIZABETH HIRSH,
*Appellee*,

and

JOHN C. LENZEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; DAVID W. HAUBER, judge. Opinion filed December 4, 2015. Affirmed.

*Joseph W. Booth*, of Booth Family Law, of Lenexa, for appellant.

*Preston A. Drobeck*, of Berkowitz, Cook, Gondring & Driskell, LLC, of Kansas City, Missouri, for appellee.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S. J.

*Per Curiam*:  John C. Lenzen appeals from the district court's order that made findings regarding his ex-wife's choice of a private school for their daughter and the amount of tuition for that school. John, a lawyer, raises a number of procedural and substantive challenges to the order, yet we find no error.

1

*Procedural background*

The facts are well-known to the parties and are undisputed so we find it unnecessary to set them forth in detail. Suffice it to say that John C. Lenzen and Lauren Elizabeth Hirsh were married in 2004, had a daughter, Elizabeth Rose Lenzen (Ellie) in 2005, and were divorced in Bermuda in 2009. Under the terms of the Bermuda consent order, the parties had joint custody of Ellie, John was to pay child support for Ellie, and in setting that child support amount, the parties took into consideration that John agreed to pay for 100% of private-school tuition for Ellie "at any primary and secondary school [to] which the parties shall reasonably agree." That order also obligated John to pay "100% of her private primary and secondary school tuition subject to the proviso that the parties shall jointly agree the choice of school for Ellie from time to time."

John eventually moved from Bermuda to Nevada and Lauren and Ellie moved to Johnson County, Kansas. Lauren determined that Pembroke Hill, in Kansas City, Missouri, would be the best school option for Ellie. When Lauren told John of this decision, he responded that he would not pay the tuition because he had not approved the school. Lauren then invited John's input into the choice of private school for Ellie, but John failed to respond or to suggest alternatives. After having received no response from John, Lauren enrolled Ellie in Pembroke Hill for the 2013-2014 school year.

Thereafter both parties filed various child custody and other motions, Lauren sought to register the Bermuda decree in Kansas, and John objected to jurisdiction in Kansas. This prompted another flurry of motions and responses. Eventually, the Johnson County, Kansas, court ruled Lauren's selection of a private school was consistent with the parties' agreement, that Pembroke Hill was a reasonable choice, that its tuition for the 2013-2014 school year was $17,580, and the tuition for the 2014-2015 school year was $18,060. The court clarified that its finding was not a judgment against John which would

2

require him to pay those costs, since the court had no personal jurisdiction over him. We examine John's claims of error below.

*Did the district court err in registering the Bermuda order under the Uniform Interstate Family Support Act UIFSA?*

We first examine John's assertion that the Bermuda consent order cannot be registered in Kansas because Bermuda is not a "state" as defined by UIFSA and cannot be a "state" without a reciprocity agreement with Bermuda.

The district court ruled that the Bermuda order would be registered under UIFSA, K.S.A. 23-36,101 *et seq.*, finding the order had been issued by a "state" because Bermuda's procedures were substantially similar to the procedures under UIFSA in Kansas. See K.S.A. 2014 Supp. 23-36,101(s)(2).

Whether jurisdiction exists is a question of law over which we exercise an unlimited scope of review. *In re Marriage of Sandhu*, 41 Kan. App. 2d 975, 978, 207 P.3d 1067 (2009). We also exercise unlimited review of the district court's statutory interpretation. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). Our review of the district court's findings on subject matter jurisdiction is a mixed question of law and fact. We review the court's factual findings in a light most favorable to the prevailing party below to determine if they are supported by substantial competent evidence. We then apply an abuse of discretion standard in determining whether those findings support the court's legal conclusion. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, Syl. ¶¶3-4, 229 P.3d 1187 (2010).

Kansas cases have not previously decided whether Bermuda is a "state" for UIFSA purposes. UIFSA is intended to be used as a procedural mechanism for the establishment, modification, and enforcement of child and spousal support obligations. See *Gentzel v.*

3

*Williams*, 25 Kan. App. 2d 552, 556, 965 P.2d 855 (1998). UIFSA allows persons to register for enforcement in Kansas a support order issued by "a tribunal of another state." K.S.A. 2014 Supp. 23-36,601. That Act defines "state" to include: "a foreign jurisdiction that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this act, the uniform reciprocal enforcement of support act or the revised uniform reciprocal enforcement of support act." K.S.A. 2014 Supp. 23-36,101(s)(2).

The district court found that Bermuda met that definition. The district court considered Bermuda's Maintenance Orders Act of 1974 and the 1989 revision and found the laws to be substantially similar to the procedures contained in UIFSA. The 1989 revision of the Bermuda act declared the following states to be reciprocating:  California, Connecticut, Florida, Hawaii, Maryland, Missouri, New Jersey, and Ohio. Every state in the United States has adopted some version of UIFSA. See *Pulkkinen v. Pulkkinen*, 127 So. 3d 738, 741 (Fla. Dist. App. 2013). Thus the eight states that had reciprocity agreements with Bermuda had also enacted UIFSA, as has Kansas. The court concluded that Kansas' version of that uniform act is substantially similar to the procedures for issuance and enforcement of support under the Bermuda laws. We find that conclusion to be both reasonable and sufficient to support jurisdiction in Kansas.

John argues that because Kansas is not listed in the Bermuda act as a reciprocating country, the statutory schemes cannot be substantially similar. But as noted above, UIFSA does not require reciprocity as a condition to treating a foreign jurisdiction as a "state." K.S.A. 2014 Supp. 23-36,101(s)(2). John also contends that a foreign jurisdiction must be recognized by the Attorney General or have a federal-level reciprocity agreement in order for its orders to qualify for registration under UIFSA, citing K.S.A. 2014 Supp. 23-3601(a). That statute provides in relevant part:

4

"If the attorney general finds that reciprocal provisions are available in a foreign nation . . . for the enforcement of support orders issued in this state, the attorney general may declare the foreign nation . . . to be a reciprocating state for the purpose of establishing or enforcing any duty of support."

The plain language of this statute, however, does not purport to establish the exclusive definition for a "state," or the exclusive means by which enforcement orders may be registered. See K.S.A. 2014 Supp. 23-36,101(s)(2). Instead, it merely sets forth one way to achieve reciprocal support enforcement for countries not certified by the Secretary of State. See 42 U.S.C. § 659a (2012) (authorizing the Secretary of State to certify countries with adequate support-enforcement procedures as one route to reciprocal support enforcement); 42 U.S.C. § 659a(d) (states have a right to enter into reciprocal arrangements for the establishment and enforcement of support orders for countries not certified by the Secretary of State "to the extent consistent with Federal law.").

Nor does caselaw support John's position. John cites *Dia v. Oakley*, 42 Kan. App. 2d 847, 217 P.3d 1010 (2009), *rev. denied* 290 Kan. 1092 (2010), but there we rejected the very argument that John makes here — that a foreign (German) order cannot be registered and enforced in Kansas because a foreign country is not a state as defined by UIFSA. We applied the same provision that the district court applied here in finding that UIFSA's definition of a state includes foreign countries with similar procedures for the enforcement of support orders. Then, as now: "Kansas law provides that a foreign country is treated as a state for UIFSA purposes if it has established support-enforcement procedures substantially similar to UIFSA." 42 Kan. App. 2d at 856.

John also cites *In re Marriage of Beeson and Van der Weg*, No. 92,673, 2005 WL 2347788 (Kan. App. 2005) (unpublished opinion), but nothing in that case supports his position that a reciprocating agreement is necessary. There, the Secretary of State had declared Netherlands a "reciprocating country" for enforcement of orders to provide

5

support to children, merely demonstrating that such an agreement is sufficient. Accordingly, the district court correctly registered the Bermuda order under UIFSA.

*Did the district court correctly exercise jurisdiction over child custody issues under the Uniform Child Custody Jurisdiction and Enforcement Act UCCJEA?*

John argues that the district court should have declined to exercise jurisdiction under the UCCJEA.

The issue is whether the district court erred in finding that it had subject matter jurisdiction over the child custody issues within this dispute. Whether subject matter jurisdiction exists is a question of law over which we exercise unlimited review. *Graham v. Herring*, 297 Kan. 847, 855, 305 P.3d 585 (2013). The question involves interpretation of the UCCJEA, which also requires this court to exercise unlimited review. See *McNabb v. McNabb*, 31 Kan. App. 2d 398, 403, 65 P.3d 1068 (2003).

K.S.A. 2014 Supp. 23-3218(a) allows a district court to change or modify a prior child custody order when a material change of circumstances is shown "[s]ubject to the provisions of the uniform child custody jurisdiction and enforcement act."

Lauren and Ellie had lived in Kansas for less than 6 months at the time this action was commenced, therefore, there was no home state claiming jurisdiction under the UCCJEA. But K.S.A. 2014 Supp. 23-37,201(a)(2) provides an alternative basis for jurisdiction which the district court found applicable here. If Kansas is not the home state, the court may find that it is in the best interest of the child that the Kansas court assume jurisdiction where the child and at least one parent have a significant connection with Kansas and substantial evidence concerning the child's future care, protection, training, and personal relationships is in Kansas. K.S.A. 2014 Supp. 23-37,201(a)(2). Both the "significant connection" and "substantial evidence" are measured at the commencement

6

of the proceedings. See K.S.A. 2014 Supp. 23-37,201(a)(1). In this case, the proceedings commenced on October 11, 2013.

John challenges the district court's finding that Ellie had a significant connection with Kansas and that substantial evidence was available in Kansas concerning the child's care, protection, training, and personal relationships under the UCCJEA. See K.S.A. 2014 Supp. 23-37,201(a)(2). He asserts that Lauren's plans to live in Kansas were future plans, and that nearly all of the evidence presented established that Ellie had contacts with Missouri, not Kansas.

On November 13, 2013, Judge David Haber in the Johnson County District Court held a telephone conference with Judge Duckworth of Clark County, Nevada, and both parties' Nevada counsel to determine jurisdiction under the UCCJEA. Judge Duckworth concluded that the Kansas court should conduct an evidentiary hearing on Lauren's domicile. If it was found that Lauren was domiciled in Kansas, jurisdiction would be more appropriate in Kansas. After holding an evidentiary hearing, Judge Hauber concluded that Lauren was a resident of Kansas, and Kansas should exercise jurisdiction under the UCCJEA.

The record supports the district court's findings. Lauren testified that they closed on her new home in Mission Hills, Kansas, in early July 2013, and she moved to Kansas on July 28, 2013. Lauren, Ellie, and Lauren's fiancé stayed in the new residence for the first few weeks. However, due to the construction mess in the new home, Lauren and Ellie stayed at the home of her fiance's boss in Leawood, Kansas, for a period of 2 weeks. During that period, Lauren spent time at the Mission Hills residence every day to check on her dogs and work at the residence. Ellie would go to her Mission Hills residence every day after school.

7

At the time Lauren filed her petition to register the Bermuda order under the UCCJEA, Lauren, her fiancé, and Ellie were temporarily residing at a weekly rental on the Missouri side of the state line. However, Lauren and Ellie had not abandoned their Kansas residence and continued to return daily to the house to care for their dogs and take care of other chores. Most of their belongings remained in the Kansas residence and they anticipated being able to return to the residence full time in November 2013. Ellie played soccer, participated in soccer, and attended a synagogue in Kansas. Lauren obtained a Kansas driver's license on October 9, 2013.

The court stated that it was clear that Lauren's intent and domicile were in Kansas. Although Pembroke Hill is in Missouri, it is the closest private school to Lauren's residence in Mission Hills. The court noted that Ellie also had connections to Kansas through extracurricular activities. The district court found that Ellie's care, training, protection, and personal relationships were with her mother and had followed her from California to Kansas, thus, "They have plenty of connections here." The court found it unimportant that Lauren and Ellie were temporarily staying in a Missouri hotel and that Ellie attended school in Missouri "in light of my knowledge of the geography here, as well as the important issues related to our jurisdiction." The district court correctly concluded that it had jurisdiction under the UCCJEA, citing K.S.A. 2014 Supp. 23-37,201 as the basis for its order.

The sole case cited by John is *In re E.T.*, 36 Kan. App. 2d 56, 137 P.3d 1035 (2006), *disapproved of in In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008). We find its facts to be significantly different. *In re E.T.* involved an infant and proceedings under the Kansas Code for the Care of Children, K.S.A. 38-1501 *et seq*. In that case, E.T. was born in Missouri and spent several months in a Missouri hospital after his birth. At the time the petition was filed, E.T. lived in Missouri with foster parents and had never been to Kansas. E.T.'s birth parents resided in Kansas. Although it appeared that Missouri was

8

the more appropriate forum, Kansas properly exercised jurisdiction after Missouri declined to accept jurisdiction. 36 Kan. App. 2d at 68.

Here, the evidence showed that Lauren and Ellie were permanent residents of Kansas and they spent time at their Kansas residence every day to work and care for the dogs. Due to construction issues, they were temporarily sleeping at a Missouri hotel. Lauren and Ellie left most of their belongings at the Kansas residence, and they never intended to change their residence to Missouri. The plan was to resume sleeping at the Kansas residence as soon as construction was completed in November 2013. "A place may in good faith become one's actual residence the first day he arrives there if he really intends to make it his domicile or home." *Blair v. Blair*, 149 Kan. 3, 6, 85 P.2d 1004 (1939).

The record, viewed in the light most favorable to Lauren, contains substantial competent evidence showing a "significant connection" to Kansas and "substantial evidence" in Kansas as of the date the proceedings commenced. K.S.A. 2014 Supp. 23-37,201(a)(2). We thus find no abuse of discretion in the court's legal conclusion that the exercise of jurisdiction was proper in Kansas.

*Was there a dispute as to which school the child should attend?*

John also contends there was no dispute for the district court to decide as to which school Ellie should attend. John claims that the district court's decision to hear an issue not in controversy violated the separation of powers doctrine of the United States and Kansas Constitutions. He claims that he never interfered with Lauren's unilateral choice of a school and never invoked the court's power to challenge that choice, and that the only conflict was whether he was required to pay for Ellie's tuition.

The district court's findings regarding the choice of school are as follows:

"Petitioner's Motion for Order Determining Child's School (DOC 48) is sustained. The parties' Bermuda Order clearly and unambiguously reflects that the parties agreed it was in the best interests of their minor child to attend private school. Respondent has never proposed an alternative private school to Pembroke Hill, where the child currently attends. The Court finds that the Petitioner's choice of Pembroke Hill is appropriate and reasonable based upon the parties' agreement, and the minor child shall continue to attend Pembroke Hill."

Whether a claim is nonjusticiable is a question of law over which this court's review is plenary. *Gannon v. State*, 298 Kan. 1107, 1118-19, 319 P.3d 1196 (2014). Under the Kansas case-or-controversy requirement, the following factors must be met: (1) parties have standing; (2) issues not be moot; (3) issues be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (4) issues not present a political question. *Gannon*, 298 Kan. at 1119. "Whether a dispute rises to the level of an actual controversy is one of degree, and the entertainment of the action rests within the discretion of the trial court. [Citation omitted.]" *Wichita Computer & Supply, Inc. v. Mulvane State Bank*, 15 Kan. App. 2d 258, 260-61, 805 P.2d 1255, *rev. denied* 248 Kan. 999 (1991).

John does not specifically challenge any of these factors. Lauren clearly had standing to raise the issue of the choice of school. See *Yordy v. Osterman*, 37 Kan. App. 2d 132, 134, 149 P.3d 734 (2007) (the district court has the authority to resolve disputes regarding choice of school when parents have joint custody but do not agree). It appears to us the only arguable factor is mootness.

We begin with the recognition that "[g]enerally, Kansas appellate courts do not decide moot questions or render advisory opinions." See *State v. Williams,* 298 Kan. 1075, 1082, 319 P.3d 528 (2014). Under the separation of powers doctrine, Kansas courts do not issue advisory opinions but decide actual cases or controversies. *Gannon,* 298 Kan. 1107, Syl. ¶ 2. The mootness test has been described as a determination of whether

it is clearly and convincingly shown that the actual controversy has ended, and the only judgment would be ineffectual and not impact the parties' rights. See *Williams*, 298 Kan. at 1082. Under this test, we find the issue of school choice was not moot.

The record reflects that John has been inconsistent in his position regarding the choice of Ellie's school. At times, he appears to have suggested that public school would be a better option, even submitting a letter from a child psychologist which he alleges supports that position. During the hearing, John repeatedly clarified that he did not want the district court to remove Ellie from Pembroke Hill, but he wanted the record to reflect that he did not agree with Lauren's unilateral decision to enroll Ellie in Pembroke Hill. But before enrolling Ellie at that school, Lauren had asked John for his input into the decision but John did not respond. At the hearing, John's counsel stated: "John has not agreed to Pembroke, but John has not asked this Court to intercede Lauren's trespass [in] placing the child in Pembroke Hill without asking him." Whether John was objecting to the choice of school, to any choice of school without his prior agreement, or was just positioning himself for an argument that he need not pay tuition for any private school is unclear. What is clear is that the record does not "clearly and convincingly" show that there was no controversy about where to send Ellie to school, thus the issue was not moot.

The district court's finding that Pembroke Hill was a reasonable choice of school for Ellie resolved a justiciable issue.

*Did the district court err in its factual findings about the choice of private school and the cost of tuition?*

We finally address John's argument that the district court erred in making factual findings that Pembroke Hill was a reasonable choice of school for Ellie and regarding the amount of its tuition for the 2013-2014 and the 2014-2015 school years. John complains

11

that the district court made these findings with the intention that John would be bound by those findings when and if Lauren sought enforcement of the obligation to pay for Ellie's tuition in the Nevada courts.

The district court made these factual findings as part of the proceedings regarding custody issues that arose between the parties concerning their minor child, Ellie. However, in making these findings, the district court recognized that it did not have personal jurisdiction over John and was not entering a money judgment for the tuition. There is no dispute that the district court did not have personal jurisdiction over John and therefore could not enforce child support obligations here under the UIFSA.

Because this issue challenges the district court's factual determination in the nature of a custody determination, see *In re Marriage of Debenham*, 21 Kan. App. 2d 121, 124, 896 P.2d 1098 (1995), we apply an abuse of discretion standard. *In re Marriage of Rayman*, 273 Kan. 996, 1001, 47 P.3d 413 (2002). Judicial discretion is abused only when no reasonable person would take the view adopted by the district court. *In re Marriage of Kimbrell*, 34 Kan. App. 2d 413, 419, 119 P.3d 684 (2005). The party asserting that the district court abused its discretion bears the burden of showing such abuse. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 480, 193 P.3d 504 (2008), *rev. denied* 288 Kan. 831 (2009). John bears that burden here.

The only issue is whether the district court exceeded its authority in determining the choice of school for Ellie and the cost of tuition at Pembroke Hill for the relevant years. Neither factual finding requires personal jurisdiction over John. Instead, these issues fall under the purview of child custody and the parenting plan. The UCCJEA determines the district court's power to make custody orders for any children of the marriage. See *Guye v. Guye*, 8 Kan. App. 2d 219, 221, 654 P.2d 482 (1982).

12

Under the UCCJEA, Kansas courts will recognize and enforce custody decrees entered in other countries if they are rendered by appropriate authorities which afford reasonable notice and opportunity. *In re Marriage of Nasica*, 12 Kan. App. 2d 794, 797, 758 P.2d 240, *rev. denied* 243 Kan. 778 (1988). John and Lauren were awarded joint custody of Ellie, and the issue of where Ellie attends school falls under the jurisdictional framework of the UCCJEA and its underlying policy of not having simultaneous custody proceedings in two different states. See *In re Marriage of Iwed*, 34 Kan. App. 2d 178, 181, 116 P.3d 36 (2005). The UCCJEA governs custody disputes, and the choice of a child's school is related to child custody matters.

> "When the district court orders that parents have joint custody of their child, they have equal rights to make decisions in the best interests of their child. K.S.A. 60-1610(a)(4)(A). This includes the decision about which school their child should attend. Thus, Mother and Father had equal rights to make decisions about which school their son should attend. See *In re Marriage of Debenham*, 21 Kan. App. 2d 121, 896 P.2d 1098 (1995). In the all-too-common event of a dispute on such a fundamental issue between parents who are subject to the court's ongoing jurisdiction during the minority of their child, it is the job of the courts to resolve the dispute in a manner that is in the best interests of the child." *Yordy*, 37 Kan. App. 2d at 134.

Personal jurisdiction over both parents is not required to assume jurisdiction for custody issues under the UCCJEA.

> "'A court must have in personam jurisdiction to enter an order to pay child support. *Kulko v. California Superior Court*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978). The same is not true of a custody determination made pursuant to the UCCJA. A petitioner need not establish that the nonresident spouse has "minimum contacts" with the forum state, *Internat. Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945), to bring an action under the UCCJA. "Rather, custody is in effect an adjudication of a child's status, which falls under the status exception of *Shaffer v. Heitner*, 433 U.S. 186, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977). A court may therefore

13

adjudicate custody under the [UCCJA] without acquiring personal jurisdiction over an absent party given reasonable attempts to furnish notice of the proceedings." *In re Marriage of Hudson*, 434 N.E.2d 107, 117 (Ind. App. 1982), *cert. denied* 459 U.S. 1202 (1983); see Unif. Child Custody Jurisdiction Act § 12, Commissioners' Note, 9 U.L.A. 149 (1979).'" *In re M.L.K.*, 13 Kan. App. 2d 251, 254, 768 P.2d 316 (1989) (quoting *Warwick v. Gluck*, 12 Kan. App. 2d 563, 568, 751 P.2d 1042 [1988]).

The district court did not impose a personal obligation or duty on John by merely finding that Pembroke Hill is a reasonable choice of school for Ellie and the cost of tuition at the school. The district court restricted its findings to those that fall under the realm of child custody. The district court restricted its ruling to custody issues. It noted that Lauren had retained counsel in the Nevada proceedings and had a path through another jurisdiction for enforcement of child support orders, but it explicitly denied any request to enforce child support or order attorney fees. The district court acted within its discretion in determining where Ellie should attend school and the cost of attendance.

Affirmed.