Nos. 100,913
100,914

STATE OF KANSAS, *Appellee*, v. THOMAS ODELL KELLY, *Appellant*.
(248 P.3d 1282)

Opinion filed March 25, 2011.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Natalie A. Chalmers*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Steve Six*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Thomas Odell Kelly appeals the denial of a number of postconviction motions in which he sought to withdraw pleas he had entered some two decades ago, on February 14, 1991. In this

appeal, Kelly argues that during an attempt to withdraw his pleas prior to sentencing, the district court was put on notice that Kelly's trial counsel had a conflict of interest, which required the district court to make further inquiry. Kelly also contends that his pleas were not knowingly and voluntarily entered. Finding that we are procedurally barred from deciding Kelly's claims, we affirm the district court.

## FACTUAL OVERVIEW

In 1990, the State filed two cases against Kelly, numbered 90CR670 and 90CR671. In 90CR670, Kelly was charged with aggravated kidnapping, rape, two counts of aggravated criminal sodomy, and aggravated sexual battery from an incident on December 11, 1989, involving W.W., a woman with whom Kelly had a child. In 90CR671, Kelly was charged with two counts of aggravated criminal sodomy for allegedly forcing B.S., a 15-year-old male, to engage in oral and anal sexual acts in November 1989.

The procedural history in both cases was influenced by the fact that at the conclusion of the December incident, an acquaintance of W.W. severely beat Kelly with a shovel, sending him to the hospital with a brain injury. Subsequent to the filing of charges, the court found that as a consequence of his brain injuries, Kelly was mentally incompetent to stand trial in both cases. The court committed Kelly to Larned State Security Hospital and further ordered that Kelly undergo emergency brain surgery, to which he had refused to consent.

Larned State Hospital (Larned) discharged Kelly on December 6, 1990. The court conducted a preliminary hearing in 90CR670 on January 14, 1991, but the preliminary hearing in the other case was delayed after the State learned that B.S. was out of state. Before the other preliminary hearing could be conducted, the parties reached a plea agreement which called for Kelly to plead guilty to attempted rape in 90CR670 and to one count of aggravated criminal sodomy in 90CR671. In addition to dismissing the remaining counts of both complaints, the State agreed not to invoke the Habitual Criminal Act and to recommend that Kelly be treated at Larned in lieu of imprisonment.

After accepting Kelly's plea, the court followed the plea agreement and committed Kelly for treatment in lieu of imprisonment, pursuant to K.S.A. 22-3430 (Ensley 1988). However, Kelly was subsequently released from Larned and returned for sentencing in June 1991.

By this time, Kelly's previous attorney, E. Jay Greeno, had left the public defender's office, and Ron Wurtz appeared at sentencing to represent Kelly. Prior to the imposition of sentence, Wurtz advised the district court that Kelly wanted to withdraw his pleas based upon Kelly's belief that Greeno had coerced him into entering the pleas. Wurtz immediately tried to explain a possible conflict of interest, stating: "As Mr. Greeno was under my supervision, I cannot actually be on this case and if it needs to be litigated there would have to be a—." The district court interrupted Wurtz and declared: "That motion, if it's considered to be a motion, will be overruled. I personally attended at that plea and the record will reflect no such inducements from the Court's personal knowledge. Based on that, the motion will be overruled." The court then proceeded to sentence Kelly to a controlling imprisonment term of 15 years to life.

Kelly's motion to modify his sentences was denied on September 11, 1991. Kelly did not directly appeal his convictions, his sentences, or the denial of his presentence motion to withdraw pleas. Beginning in 1993, Kelly filed a number of postconviction motions, including a K.S.A. 60-1507 motion alleging ineffective assistance of counsel, which was denied. In 2007 and 2008, Kelly filed a series of motions, which the district court eventually consolidated and liberally construed as a request for correction of an illegal sentence under K.S.A. 22-3504, a request for relief under K.S.A. 60-1507, and a request to withdraw his pleas under K.S.A. 22-3210. The district court summarily denied Kelly's motions, finding that his claims did not fit within the definition of an illegal sentence, that his 60-1507 claims were time-barred, and that Kelly's conclusory statements about his plea did not warrant withdrawal under K.S.A. 22-3210.

On March 5, 2008, Kelly filed a motion to reconsider, which reasserted his previous complaints as well as adding allegations of

wrongful conduct by his trial attorneys. The new allegations against Greeno were that he failed to inform Kelly that B.S., the victim in 90CR671, had left the state; that Greeno had told Kelly that he could not win and had no choice but to plead guilty; and that Greeno had advised Kelly to tell the court that he was entering his pleas freely, knowingly, voluntarily, and intelligently. The allegation against Wurtz was the somewhat curious claim that Wurtz had refused to present Kelly's presentence plea withdrawal motion. Kelly also complained that the district court's rulings were based upon journal entries, rather than a review of hearing transcripts, and that the court had refused to allow him to file pro se motions. The district court denied Kelly's motion for reconsideration in a June 2, 2008, memorandum decision, which was based on much the same rationale as the previous memorandum decision.

On appeal, Kelly raises a new complaint about the district court's failure to inquire into Wurtz' conflict of interest and reiterates his claim that his pleas were not voluntarily and knowingly entered.

## CONFLICT OF INTEREST CLAIM

Kelly first complains that Wurtz put the trial court on notice that he had a conflict of interest in representing Kelly on the plea withdrawal motion, which triggered a duty for the district court to make further inquiry into the conflict. Kelly asks that the matter be remanded for the district court to first inquire into the conflict of interest and then to take evidence on the merits of the motion to withdraw plea. In other words, he attempts to include his claim that he was denied his constitutional right to conflict-free counsel as a part of his motion to withdraw plea. However, the Sixth Amendment to the United States Constitution claim is separate from the merits of the plea withdrawal claim. Granted, one of the factors a district court should consider in exercising its discretion to allow a plea withdrawal for good cause is whether the defendant was represented by competent counsel. See *State v. White*, 289 Kan. 279, 285, 211 P.3d 805 (2009). However, that inquiry focuses on the adequacy of representation at the plea hearing, not at the hearing on a motion to withdraw plea.

Therefore, Kelly's conflict of interest claim was a proper subject for a K.S.A. 60-1507 motion, not a motion to withdraw plea under K.S.A. 22-3210. Accordingly, we will consider Kelly's claim in that context.

## A. Standard of Review

The district court summarily denied those claims that it construed to be 60-1507 issues. For summary denials, we conduct a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief. *Trotter v. State*, 288 Kan. 112, 132, 200 P.3d 1236 (2009).

## B. Analysis

Kelly has at least three procedural obstacles that stand in the way of his getting review of the conflict of interest claim. First, he did not directly appeal, and a 60-1507 motion cannot be used as a substitute for a direct appeal. See *Rice v. State*, 37 Kan. App. 2d 456, 459, 154 P.3d 537, *rev. denied* 284 Kan. 946 (2007).

Next, Kelly filed a prior 60-1507 which raised the issue of ineffective assistance of counsel. An ineffective assistance of counsel claim is founded upon the defendant's Sixth Amendment right to counsel, which is the same basis upon which Kelly relies to argue his current conflict of interest claim. The district court is not required to entertain a second or successive 60-1507 motion for similar relief on behalf of the same prisoner. See K.S.A. 60-1507(c); Supreme Court Rule 183(d) (2010 Kan. Ct. R. Annot. 255). Absent a showing of exceptional circumstances, the court can dismiss a second or successive motion as an abuse of remedy. *Toney v. State*, 39 Kan. App. 2d 944, 947, 187 P.3d 122 (2008).

" 'Exceptional circumstances are unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding.' [Citation omitted.]" *Woodberry v. State*, 33 Kan. App. 2d 171, 175, 101 P.3d 727, *rev. denied* 278 Kan. 853 (2004). Kelly does not explain the unusual events or changes in the law which

have occurred since he filed his previous 60-1507 motion, and we can discern no such exceptional circumstances.

Kelly was aware of the conflict of interest issue at the sentencing hearing. While he purports to make the issue an absence of judicial inquiry, the error in this case had nothing to do with judicial inquiry. Wurtz presented the district court with sufficient information to find a conflict of interest. Hopefully, a district court need not inquire further to ascertain that when a defendant is represented by the public defender's office and the defendant alleges an attorney in that office coerced or misled the defendant, then the attorney's supervisor in the public defender's office has a conflict in representing the defendant on that claim. It is difficult to imagine any judicial inquiry which might have made the conflict any more clear.

Moreover, there has been no intervening change in the law which would have prevented Kelly from raising the conflict of interest claim in either a direct appeal or in his first 60-1507 motion. Accordingly, Kelly's successive claim that he was denied effective assistance of counsel, as required by the Sixth Amendment, is an abuse of remedy.

The final obstacle to review is found in K.S.A. 60-1507(f)(1), which required Kelly to file his 60-1507 action within 1 year of the termination of appellate jurisdiction in his case. He did not meet that deadline. To avoid the time limitation, he had to convince the district court that an extension of time was necessary to prevent a manifest injustice. See K.S.A. 60-1507(f)(2). "Manifest injustice" has been described in other contexts as meaning "obviously unfair" or "shocking to the conscience." *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007).

Kelly's attempt to claim that the district court's failure to inquire "simply allowed defense counsel to stand mute" on the plea withdrawal motion is disingenuous, at best. Wurtz made no attempt to argue the merits of the motion. To the contrary, Wurtz specifically told the district court that he could not be on the case to litigate the motion, before the district court interrupted and summarily ruled on the motion. The problem was not that the district court allowed a conflicted attorney to argue the motion, but that the

district court did not permit any argument whatsoever. It is not manifestly unjust to apply the time limitation to Kelly's conflict of interest claim, and we find that claim to be procedurally barred.

## PLEA WITHDRAWAL

In his second issue, Kelly argues that he should be entitled to withdraw his pleas because they were not knowingly and voluntarily entered. He includes all of the arguments he has made in his various motions and appears to treat the matter as if there had been but one motion under K.S.A. 22-3210(d). However, Kelly recognizes that the district court's basis for exercising its discretion to allow a plea withdrawal is different for a postsentencing motion. A plea may be withdrawn before sentencing "for good cause shown," whereas a postsentencing plea withdrawal may be ordered "[t]o correct manifest injustice." K.S.A. 22-3210(d). Accordingly, Kelly creatively suggests that we can separate his arguments based upon when they were first made, analyzing the arguments made at the sentencing hearing for good cause and analyzing the postsentencing arguments for manifest injustice. Then, he would have us either reverse all of the denials and remand with directions to permit the withdrawal of his pleas, or remand to the district court for an evidentiary hearing.

Kelly's contorted analysis highlights his insurmountable problem. He received a ruling on the merits of his motion to withdraw pleas at the sentencing hearing in 1991. Kelly did not appeal that ruling, and it became a final ruling on the plea withdrawal issue. Accordingly, the dispositive question is whether res judicata prevented Kelly from relitigating the plea withdrawal issue through his postsentencing motions.

### A.   Standard of Review

The applicability of res judicata is a question of law, subject to unlimited review. See *In re Care & Treatment of Sporn*, 289 Kan. 681, 686, 215 P.3d 615 (2009).

### B.   Analysis

In Kansas, there are four requirements to apply res judicata: (1) identity in the thing sued for, (2) identity of the cause of action,

(3) identity of persons and parties to the action; and (4) identity in the quality of persons for or against whom claim is made. *In re Sporn*, 289 Kan. at 686. In Kelly's current postsentencing motion, he is suing for the same thing that he was denied at the sentencing hearing, *i.e.*, leave to withdraw his plea. The cause of action and parties were identical. Kelly was his own proponent for his position in all of the motions. The doctrine of res judicata is applicable in this situation.

In its initial memorandum decision, the district court noted that Kelly had not appealed the denial of his initial plea withdrawal motion. However, the court appeared to apply the exceptional circumstances analysis applicable to 60-1507 motions. There is precedent for applying to plea withdrawal motions certain procedures governing 60-1507 motions. See *State v. Jackson*, 255 Kan. 455, 458, 874 P.2d 1138 (1994) (applying procedures governing hearings on 60-1507 motions as guidance for hearings on K.S.A. 22-3210[d] [Ensley 1988] motions).

Nevertheless, Kelly does not ask us to treat his motion as a 60-1507 motion and does not argue the existence of exceptional circumstances that would provide relief through a 60-1507 motion notwithstanding his failure to directly appeal. The reason that he does not argue for the application of K.S.A. 60-1507 procedural rules is most likely revealed by his declaration that "there is no time limitation for a motion to withdraw one's plea." But *cf.* K.S.A. 60-1507(f)(1) (1-year limitation on filing 60-1507 motion). Regardless, Kelly does not present us with any mechanism whereby the doctrine of res judicata may be circumvented to permit a relitigation of the plea withdrawal issue. The district court should be affirmed. See *State v. Murray*, 285 Kan. 503, 533, 174 P.3d 407 (2008) (district court's correct result may be upheld for alternative reasons).

Affirmed.