NOT DESIGNATED FOR PUBLICATION

No. 112,660

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JASON A. FULTON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed January 8, 2016.
Affirmed.

*William K. Rork*, of Rork Law Firm, of Topeka, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.

*Per Curiam*:  Jason A. Fulton appeals the district court's denial of his second
motion under K.S.A. 60-1507, which motion Fulton filed long after the applicable time
limit for such a motion had expired. He seeks a reversal of his 1998 jury convictions for
felony murder and other lesser offenses and a new trial. The district court conducted a
full evidentiary hearing on the motion. It concluded that Fulton had failed to meet his
burden of showing that his untimely motion should be considered in order to prevent
manifest injustice. Additionally, it held that he failed to demonstrate exceptional
circumstances warranting consideration of his successive motion. We affirm.

1

The facts supporting Fulton's 1998 jury convictions for felony murder, conspiracy to possess cocaine, and attempted possession of cocaine are not germane to the issues in this appeal, and we need not recite them here. The Kansas Supreme Court detailed those facts in its decision affirming Fulton's convictions and sentence on direct appeal in *State v. Fulton*, 269 Kan. 835, 836-37, 9 P.3d 18 (2000). The facts that are germane are those that concern juror misconduct occurring while the jury was deliberating. Fulton now claims that his trial counsel rendered constitutionally deficient posttrial assistance in that counsel failed to take the necessary steps to demonstrate that Fulton's fair trial rights were prejudiced by that juror misconduct. The manner in which the trial judge dealt with the juror misconduct was central to Fulton's direct appeal. Because the manner in which his trial attorney failed to deal with that misconduct is central to Fulton's claims in his current motion, we will both refer to and quote extensively from *Fulton* to provide context.

The *Fulton* court explained that the trial court had entered an order excluding any evidence at trial concerning Jerry Hall, a brother of State's witness Mark Hall. Jerry had told police that at a time relevant to Fulton's charged offenses Mark had seen Fulton and another person running and carrying guns that had been fired. Jerry was killed sometime before Fulton's trial. The trial court prohibited any reference to Jerry to avoid any implication that Fulton was involved in Jerry's murder. Aside from one mistaken use of Jerry's name by defense counsel, who was actually referring to Mark, the limitation was observed. However, in spite of those efforts, Jerry's name came up during the jury deliberations. Our Supreme Court described the circumstances in the following:

> "Then, during deliberations, Juror No. 15 talked to the other jurors about Jerry Hall's murder.
>
> "While the jury was deliberating, the trial judge received a written question signed by the presiding juror. It stated:

""In the course of our deliberations one of the members of the jury introduced some information relative to the brother of one of the brothers, Jerry Hall brother of Mark Hall, whose situation could potentially influence the circumstances of this case. Is that appropriate or is it a concern that should be addressed?"'

"The prosecutor suggested that the jury be brought into the courtroom and admonished to consider only facts in evidence, and then each individual juror should be asked to state yes or no on the record whether he or she could abide by the admonition and reach a verdict strictly on the basis of the evidence. Defense counsel wanted to send a note to the presiding juror asking for the juror who mentioned Jerry Hall to meet with the trial judge and counsel to answer questions about the extent and timing of his or her knowledge and what he or she communicated to the other jurors. The trial judge rejected both suggested approaches in favor of his disqualifying the juror who ignored the court's instructions. Defense counsel objected and requested a mistrial.

"The record resumes with the parties, counsel, and jurors reconvened in the courtroom. Off the record and in private discussions, the trial judge had disqualified the misbehaving juror and replaced her with the alternate juror:

"'Ladies and Gentlemen, I am going to send you back into the jury deliberations room to recommence deliberations. You have a new juror aboard. You need to start from the beginning and redeliberate this case. I need to re-read an instruction to you. Instruction Number 20 I will read it again to you. Please pay careful attention to this instruction as you do all instructions in this case.

"'Number 20, insofar as the jury is concerned, you may consider as evidence whatever is admitted in the trial as part of the record, whether it be the testimony of witnesses or an article or document marked as an exhibit or other matter admitted, such as an admission, agreement or stipulation.

"'Ladies and Gentlemen, during the course of your deliberations if anything outside of the evidence in this case has been brought up to you in the course of your deliberations you are to absolutely and unequivocally disregard it.

"'Please retire to the jury deliberations room, thank you." *Fulton*, 269 Kan. at 838-39.

The new jury then reached a guilty verdict on three counts:  felony murder, conspiracy to possess cocaine, and attempted possession of cocaine. The jury was deadlocked on the remaining several counts. Fulton timely filed a motion for new trial. On August 7, 1998, the district court sentenced Fulton to a controlling sentence of 15 years to life. The district court held a hearing on the motion for new trial in September 1998. The *Fulton* court described in detail what transpired at the September 1998 hearing in the following:

> "The defendant's motion for new trial centered on the trial judge's dismissing the misbehaving juror and replacing her with the alternate juror. For this reason, Judge Andrews, who presided at trial, testified at the hearing, and defendant's motion for new trial was considered and ruled upon by the Honorable James P. Buchele.
>
> "Judge Andrews testified that he had talked with the presiding juror and that no record was made of the discussion. He asked the presiding juror to identify which juror mentioned Jerry Hall, and the presiding juror told him who it was.
>
> "Judge Andrews testified that he then talked with the misbehaving juror and that no record was made of the discussion. He testified that the juror acknowledged that she had mentioned Jerry Hall.
>
> "'I asked her if she gave any details about the Jerry Hall murder. She advised she had not, and then she volunteered to me that she was concerned for her safety, and I asked her if she wanted to be removed from the trial, she indicated she did. I asked her if she had expressed any concern about her personal safety to the other jurors, and she said she had not.'

Justifying his action in removing the juror, Judge Andrews testified:

"'I did have a juror that had been sequestered throughout who had been admonished at every recess, had been there for every readback, and who had been under the very close and watchful eye of my bailiff, so I thought the simplest and purest thing to do in this trial was to just go ahead and remove the offending juror. I was satisfied she had not said enough, based on what she told me, to taint the jury, and move on forward with an alternate.'

Asked why he removed the juror if he was satisfied she had not tainted the jury, Judge Andrews responded: 'Well, I was afraid she might bring the issue up again. It could have definitely gotten more complicated, and, to me, it was just an easier issue to go ahead and remove her and put a fresh juror in there.'" 269 Kan. at 839-40.

We also note that, at the September 1998 hearing, Judge Buchele asked Fulton's trial counsel, Steve Rosel, if he had interviewed any of the jurors. Rosel confirmed for the court he had tried to but they would not talk. He stated, "After the trial I found out through an acquaintance of mine that her sister was on the jury and I said, 'Well, hey, tell her I want to talk to her.' She called me back and said she was also fearful and she wasn't going to talk about it." Judge Buchele denied Fulton's motion for new trial in October 1998.

On direct appeal Fulton argued, among other things, that he should be granted a new trial because of the juror's misconduct and the trial court's mishandling of that misconduct. He argued that the trial court had impermissible ex parte contact with jurors. He also claimed error in the trial court's decision to replace the offending juror without permitting defense counsel to question the jurors to determine whether their deliberations were tainted by the improperly injected information. Fulton contended that the juror misconduct found by the trial court, which was implicit in its removal of the juror, required that the trial court declare a mistrial.

5

The *Fulton* court held that Fulton's "effort to equate cause for dismissing a juror with cause for a mistrial is without merit" and noted that K.S.A. 1999 Supp. 22-3412(c) authorized substitution of an alternate juror during deliberations for "reasonable cause." *Fulton*, 269 Kan. at 841. On the other hand, K.S.A. 22-3423(1)(c) provided that the district court may order a mistrial any time it finds termination is necessary because "'prejudicial conduct . . . makes it impossible to proceed with trial without injustice to the defendant or the prosecution.'" *Fulton*, 269 Kan. at 841. The court stated: "Thus, the vital difference between dismissing a juror and cause for a mistrial is prejudice—the element that the defendant urges the court to disregard." 269 Kan. at 841.

Fulton claimed that prejudice "must be presumed because the inquiry necessary to determining whether prejudice occurred was thwarted by the trial judge's actions." 269 Kan. at 842. The State claimed that the facts in the record from the trial judge's testimony demonstrated a lack of prejudice. The court recognized that the trial judge had at least in part elicited evidence that countered prejudice. The trial judge had asked Juror No. 15 if she gave any details about the Jerry Hall murder or if she expressed concern about her personal safety to other jurors. Juror No. 15 had answered "'no'" to both questions. 269 Kan. at 843. The court, however, found the trial judge's questioning of Juror No. 15 incomplete:

> "The trial judge's testimony . . . leaves material questions unanswered. What did she
> know about Jerry Hall? How did she know it? Why did she bring him up in deliberations?
> Did she talk to other jurors about a connection between the murder defendant was
> charged with and the murder of Jerry Hall? Why was she concerned for her own safety?
> Was there any discussion among jurors about concerns for personal safety?" 269 Kan. at
> 843-44.

Nevertheless, our Supreme Court rejected Fulton's claim that he suffered prejudice because of the trial judge's ex parte questioning of jurors or his "failure to inquire and/or refusal to permit inquiry about the effect on the jury of the extraneous information."

*Fulton*, 269 Kan. at 841-42. Rather, even had there been error, the court found Fulton failed to meet his burden of showing prejudice:

> "[T]he defendant failed to pursue his claim by utilizing the post-trial procedure to recall jurors and question them pursuant to K.S.A. 60-441. His argument would have more merit if he had done so. Further, the offending juror responded in the negative to the question of whether she had said anything about Jerry Hall's murder. It appears Jerry Hall's only role in this tragedy was to notify the police that his brother had observed the defendant on the night in question. We also find this situation somewhat analogous to cases in which the trial court fails to admonish the jury prior to a recess. Although it is error not to do so, we have held prejudicial error will not be presumed from such failure to admonish the jury. [Citation omitted.]."

In the paragraphs immediately above the *Fulton* court all but invited Fulton to collaterally challenge the effectiveness of trial counsel for failing to employ the statute in order to "recall jurors and question them." It even provided a partial script of questions to ask the offending juror as well as the other jurors to delve into the issue of prejudice. The court upheld Fulton's convictions in its *Fulton* opinion issued July 21, 2000. Its mandate was then issued August 22, 2000.

*Fulton's prior actions for postconviction relief*

In July 2001, Fulton filed his first motion under K.S.A. 60-1507. Fulton claimed that he received ineffective assistance of appellate counsel citing several grounds. In spite of the direct reference by the Supreme Court in *Fulton* concerning Fulton's and trial counsel's failure to resort to the statute to recall jurors for the motion for a new trial, Fulton did not raise any claims of ineffective assistance of trial counsel. This court affirmed the district court's summary denial of Fulton's K.S.A. 60-1507 motion. *Fulton v. State*, No. 91,123, 2005 WL 1089034 (Kan. App. 2005) (unpublished opinion), *rev. denied* 280 Kan. 982 (2005).

7

A few months after our Supreme Court denied review of Fulton's first K.S.A 60-1507 action, Fulton filed a federal habeas corpus action under 28 U.S.C. § 2254 alleging ineffective assistance of appellate counsel and various trial errors, including allegations of juror misconduct involving Juror No. 15. The federal district court granted the State's motion to dismiss the habeas petition as time barred. See *Fulton v. McKune*, No. 05-3486-SAC, 2006 WL 749633, at *2 (unpublished order) (D. Kan. 2006). That court subsequently denied Fulton's motion to alter or amend judgment. *Fulton v. McKune*, No. 05-3486-SAC, 2007 WL 201157, at *1-2 (unpublished order) (D. Kan. 2007). In October 2007, the Tenth Circuit Court of Appeals denied Fulton's request for a certificate of appealability under 28 U.S.C. § 2253(c). *Fulton v. McKune*, 250 Fed. Appx. 263, 2007 WL 2827666, *1-2 (unpublished order) (10th Cir. 2007).

*Fulton's current K.S.A. 60-1507 motion*

In March 2013, over 12 years after the mandate in his direct appeal was issued, Fulton filed the K.S.A. 60-1507 motion that is the subject of this appeal. Fulton claimed to have new evidence of juror misconduct that he did not discover until 2012. He obtained that evidence with help from family members who hired a private investigator to locate and interview Juror No. 15. Fulton argued that this newly discovered evidence demonstrated exceptional circumstances and manifest injustice sufficient for the district court to grant his otherwise untimely and successive motion. Fulton also argued ineffective assistance of both his trial and appellate counsel based on this newly discovered evidence. Specifically, Fulton alleged his trial counsel was ineffective for failing to employ K.S.A. 60-441 to recall the jurors to support a juror misconduct claim. He alleged his appellate counsel was ineffective for failing to argue trial counsel's ineffectiveness and for failing to seek a remand so that the jurors could be recalled to testify concerning juror misconduct and the allegedly resulting prejudice.

8

The district court held an evidentiary hearing on November 6, 2013. At the evidentiary hearing, Fulton called three witnesses on his behalf: Juror No. 15; Kathryne Padia, the private investigator who located and interviewed Juror No. 15 for Fulton; and himself. Fulton did not call his trial counsel to testify at the hearing, nor did he call any of the other jurors.

Juror No. 15 confirmed that she was the juror removed during deliberations at Fulton's murder trial. She denied that any attorney or investigator had contacted her about the trial. She said she knew Jerry Hall and was aware that he had been killed prior to Fulton's trial. She stated that when the State's witness Mark Hall testified, she assumed that Mark was related to Jerry. She recalled telling the jurors during deliberations that she felt Fulton's case was related to another murder case, that she wanted to be off the jury, and needed to speak with the trial judge. She claimed initially that she never mentioned Jerry or Mark by name. She denied that she ever told the jury that Mark's testimony was in retaliation against Fulton for Jerry's murder. However, she also agreed it was "possible" that she mentioned to the jury that "Jerry Hall was found dead in front of his house" and that she could "have implied that Jason Fulton had something to do with it." She indicated that when she told the trial judge that she needed to be removed she discussed her belief that Mark's testimony was retaliation against Fulton that she could not make an unbiased decision, and that as the only African-American juror she felt threatened regardless of the way she decided the case.

Juror No. 15 also testified that when she brought up Jerry's murder the other jurors became upset and angry with her. Their comments indicated that they did not think she should have disclosed that information to them. She acknowledged that the presiding juror said she needed to talk to the judge about her disclosure and that he wrote a note to the judge bringing the disclosure to his attention.

9

Padia testified Fulton's family hired her as an investigator in 2012. Padia interviewed Juror No. 15 in May 2012 and prepared a transcript of their conversation. Padia testified that Juror No. 15 told her that she had relayed to other jurors that she believed the case they were listening to was tied to another case involving the murder of Jerry Hall, the brother of Mark Hall who had testified. On cross-examination, Padia testified that Juror No. 15 did not speak to her specifically about Jerry, she just spoke in generalities. She said Juror No. 15 stated that she told the jury that the cases were not related or that she did not think the cases were related. On redirect, Padia testified that Juror No. 15 stated that she did not mention anything to the jury about retaliation, but she did tell the jury that Jerry was Mark's brother.

Fulton then testified. He said he told trial counsel to contact Juror No. 15 and other jurors to investigate juror misconduct issues prior to the new trial motion. Trial counsel told him that he was going to have Juror No. 15 testify at a hearing on the motion for new trial. Fulton claimed he had paid trial counsel three different times, both before and after the new trial motion, for investigators counsel stated he had hired or was hiring. Fulton acknowledged that trial counsel never gave him any investigation reports. According to Fulton, trial counsel told him he sent an investigator to see Juror No. 15, who reported that Juror No. 15 was still scared. Fulton also testified that it was not until he hired Padia that he found out that Juror No. 15 had never been contacted by anyone. Fulton was convinced that Judge Andrews and his trial counsel had lied to him: Judge Andrews lied about the contents of his discussion with Juror No. 15, and trial counsel lied about his efforts to talk to jurors. Fulton stated that he waited so long to obtain an investigator to speak to the jurors because he had mistakenly relied upon trial counsel's statements that the jurors were too scared to talk. He explained that he did not want to make them more scared and just waited, hoping that maybe someone would eventually come forward.

The district court denied Fulton's claims for relief. Specifically, the district court found that Fulton failed to show manifest injustice to permit an untimely K.S.A. 60-1507

10

motion or exceptional circumstances to allow a successive K.S.A. 60-1507 motion. Fulton appeals.

ANALYSIS

IS FULTON'S K.S.A. 60-1507 MOTION PROCEDURALLY TIME BARRED?

Fulton argues the district court erred in determining that he did not establish manifest injustice sufficient to extend the 1-year time limitation under K.S.A. 60-1507(f)(1) to file his K.S.A. 60-1507 motion. Fulton claims that trial counsel's ineffectiveness prevented him from obtaining in a timely manner what he claims is newly discovered evidence of juror misconduct, to his prejudice.

*Our standard of review and guiding principles*

Typically, a defendant in custody must file his or her K.S.A. 60-1507 motion within 1 year of the final order entered in the original criminal case. See K.S.A. 60-1507(f)(1). This 1-year time limitation became effective July 1, 2003. Because the final order in Fulton's direct appeal was issued in 2000, Fulton was required to file his K.S.A. 60-1507 motion on or before June 30, 2004. He had done so, filing his first K.S.A. 60-1507 motion in July 2001. The current motion, though, was filed in March 2013, more than 8 years after expiration of the statutory limitation period. Fulton concedes his motion is untimely.

However, the 1-year time limitation may be extended to prevent a manifest injustice. See K.S.A. 60-1507(f)(2). "Manifest injustice" has been interpreted to mean "'obviously unfair'" or "'shocking to the conscience.' [Citations omitted.]" *Ludlow v. State*, 37 Kan. App. 2d 676, 686, 157 P.3d 631 (2007). The burden is on the movant in a K.S.A. 60-1507 action to show manifest injustice. See K.S.A. 60-1507(f)(2); *State v.*

11

*Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013) (citing *State v. Kelly*, 291 Kan. 868, 873, 248 P.3d 1282 [2011]).

The Kansas Supreme Court recently clarified the appropriate legal standards to employ when determining whether manifest injustice mandates an extension of time for a movant's untimely K.S.A. 60-1507 motion. In *Vontress v. State*, 299 Kan. 607, 608, 325 P.3d 1114 (2014), our Supreme Court stated that a movant's "failure to provide the reasons for the delay does not automatically exclude the late-filed motion [; r]ather, manifest injustice must be determined based on the totality of the circumstances in each case." The court provided a set of nonexclusive factors for courts to consider when conducting a totality of the circumstances manifest injustice inquiry under K.S.A. 60-1507(f)(2):

> "whether (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." *Vontress*, 299 Kan. at 616.

Each of the factors considered under this analysis need not be given equal weight, and no single factor is dispositive. 299 Kan. at 616-17.

Fulton argues that trial counsel's ineffective assistance prevented him from demonstrating prejudice from juror misconduct at the motion for new trial and, further, prevented him from timely filing for postconviction relief on the same basis. Before counsel's assistance can be found to be so deficient that it requires reversal of a conviction, the defendant must satisfy the constitutional standards set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). Under that test, the movant must establish (1) counsel's performance was constitutionally deficient, namely, that counsel made errors so serious that his or her

performance was less than that guaranteed by the Sixth Amendment to the United States Constitution, and (2) counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so severe as to deprive the defendant of a fair trial. *State v. Cheatham*, 296 Kan. 417, 431, 292 P.3d 318 (2013). To establish prejudice, the defendant must show there is a reasonable probability that, but for counsel's error(s), the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 296 Kan. at 431.

Where, as here, the district court conducts a full evidentiary hearing on a K.S.A. 60-1507 motion, an appellate court reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the court's conclusions of law. Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012). Appellate review of the district court's ultimate conclusions of law is de novo. *Thompson v. State*, 293 Kan. 704, 715-16, 270 P.3d 1089 (2011).

*Fulton failed to demonstrate manifest injustice*

Here the district court explicitly referred to the *Vontress* factors in finding Fulton did not establish manifest injustice. We note that Fulton never argued the third *Vontress* factor—actual innocence—in the district court, nor has he done so on appeal.

The district court held that, under the first *Vontress* factor, Fulton's claimed reasons or circumstances that prevented him from timely attacking the effectiveness of trial counsel were insufficient to support a finding of manifest injustice. Specifically, the district court concluded:

13

• Fulton should have raised his ineffective assistance of trial counsel claim in his first K.S.A. 60-1507 motion because the Kansas Supreme Court, in *Fulton*, 269 Kan. at 843-44, put Fulton on notice that his trial counsel had failed to request a recall of the jurors under K.S.A. 60-411, which failure defeated his prejudice claim on appeal;

• Our Supreme Court's finding in *Fulton*, 269 Kan. at 843-44, that the September 1998 hearing left "material questions unanswered" regarding any taint from Juror No. 15's misconduct, coupled with trial counsel's testimony from the same hearing that he had not interviewed any of the jurors, triggered the requirement that Fulton exercise reasonable diligence in contacting jurors and Juror No. 15, or hiring a private investigator to do so, within 1 year after his appeal was final;

• Fulton's testimony at the evidentiary hearing that he had hired his trial counsel to contact the jurors prior to filing his first K.S.A. 60-1507 motion was "self-serving" and insufficient to satisfy his burden, given that Fulton did not call his trial counsel to testify at the evidentiary hearing or present other evidence corroborating his claims regarding that hiring; and

• Fulton failed to show that, in the exercise of reasonable diligence, he could not have obtained the testimony of Juror No. 15 or other jurors for his first K.S.A. 60-1507 motion.

Fulton argues on appeal that he demonstrated that he was prevented from timely filing this motion. He relies on what Judge Andrews testified to at the hearing on the new trial motion, trial counsel's statements at that motion hearing that he had tried but failed to contact jurors, Juror No. 15's testimony about her misconduct, and Fulton's testimony that trial counsel told him both before and even after the filing of the first K.S.A. 60-1507 motion that counsel was still trying to contact jurors.

14

We are not persuaded. Upon *Fulton's* issuance in 2000, Fulton had notice of Supreme Court's concerns regarding the trial judge's questioning of Juror No. 15 and trial counsel's failure to recall the jurors under K.S.A. 60-441. Moreover, Fulton knew from his trial counsel's statements at the September 1998 hearing that jurors were reluctant to talk to him and, therefore, affirmative steps to pursue contact with jurors needed to be taken. Fulton was not forced to wait until 2012 to hire an investigator to act on such knowledge. Fulton's hope, that in time, a juror would conquer fear and just come forward about jury misconduct does not support, in any way, a finding that he was prevented from contacting the jurors in a timely fashion. Fulton also asks us to excuse his untimely filing because his retained trial counsel assured him counsel would contact the jurors prior to the filing of his first K.S.A. 60-1507 motion. We decline. First of all, that obviously did not happen: The first motion was filed without any reference to juror misconduct. Second, the district court found Fulton's testimony in this regard "self-serving" and "insufficient to satisfy his burden of proof" which, to us, means the district court found that this testimony was not more likely true than not true. We will not reweigh the evidence or reassess the credibility of witnesses. *State v. Hall*, 292 Kan. 841, 859, 257 P.3d 272 (2011). The district court did not err regarding its analysis of the first *Vontress* factor.

The second *Vontress* factor requires some consideration of the merits of Fulton's claim that trial counsel was ineffective. The district court specifically recognized that the standards announced in *Strickland* provided the framework for its analysis. The district court, having heard Fulton's evidence, cut directly to the dispositive heart of the *Vontress* merits analysis required to analyze a claim of manifest injustice:

> "The testimony of the deliberating jurors has not been offered to show that extraneous information was taken into consideration. Thus, [Fulton] has not shown that his alleged ineffective assistance of counsel prejudiced the outcome of his case."

15

We agree. Fulton needed to show that Juror No. 15's misconduct in providing extrajudicial evidence actually tainted the deliberations. If it did not, there could be no prejudice. We know from the testimony of Juror No. 15 herself that as soon as she brought up her Jerry Hall information the other jurors became upset with her for doing so and asked the trial judge in writing: "Is that appropriate or is it a concern that should be addressed?"

Fulton only adduced evidence that a juror the trial court promptly removed injected improper information into the deliberations. But, in light of the other jurors' immediate negative response to that injection, the trial judge's restated admonition not to consider such information, the presumption that the other jurors followed the instructions, and the lack of testimony from other jurors that their deliberations were in fact tainted, Fulton has failed to demonstrate prejudice. See *Williams v. Lawton*, 288 Kan. 768, Syl. ¶ 16, 207 P.3d 1027 (2009) (Juror misconduct will not justify the granting of a new trial unless the movant demonstrates that the misconduct substantially prejudiced the movant's rights.). The district court did not err in its conclusion that Fulton failed to demonstrate manifest injustice under the second *Vontress* factor.

Fulton does not argue that he raised a claim under the third *Vontress* factor, *i.e.*, actual innocence. Therefore, the district court did not err when it concluded that manifest injustice avoidance did not require consideration of Fulton's untimely motion after all.

*Fulton's successive K.S.A. 60-1507 motion constitutes an abuse of remedy*

Fulton acknowledges this is his second motion under K.S.A. 60-1507. However, he argues that exceptional circumstances warrant consideration of his motion. He contends that he only recently discovered the credible evidence of the juror misconduct he claims denied him a fair trial and this newly discovered evidence constitutes an exceptional circumstance. Although the district court conducted an evidentiary hearing

16

on the merits of Fulton's K.S.A. 60-1507 motion, it ultimately determined that Fulton had failed to demonstrate exceptional circumstances to justify a successive motion for relief.

*Our standard of review*

A district court is not required to consider a successive motion under K.S.A. 60-1507 unless the movant shows circumstances justifying the failure to pursue a particular ground for relief in the prior motion. See *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013) (citing K.S.A. 60-1507[c]); see also Supreme Court Rule 183(d) (2015 Kan. Ct. R. Annot. 272) ("successive motions provisions"). A movant in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief, and "a subsequent motion need not be considered in the absence of a showing of circumstances justifying the original failure to list a ground." (Emphasis added). *Trotter*, 296 Kan. 898, Syl. ¶ 2. Absent a showing of such justifying circumstances, the district court can dismiss a second or successive K.S.A. 60-1507 motion as an abuse of remedy. See *Kelly*, 291 Kan. at 872-73.

Newly discovered evidence can constitute exceptional circumstances warranting consideration of a successive K.S.A. 60-1507 motion. See *Trotter*, 288 Kan. at 127; see also *Moncla v. State*, 285 Kan. 826, 839-40, 176 P.3d 954 (2008) (right to an evidentiary hearing on a claim seeking a new trial based on newly discovered evidence raised in a K.S.A. 60-1507 motion). But where the allegation is newly discovered evidence, the movant must show the evidence could not have been produced with reasonable diligence and is of such materiality that a reasonable probability exists of a different result upon retrial. *State v. Cook*, 281 Kan. 961, 992, 135 P.3d 1147 (2006).

*Justifying circumstances*

Fulton argues that his newly discovered evidence of Juror No. 15's misconduct combined with his trial counsel's failure to cause the recall of the jurors are circumstances

that justify his successive motion. However, the district court considered these same allegations when it conducted its manifest injustice analysis. It determined that Fulton failed to exercise reasonable diligence in pursuing evidence that the jury was tainted by Juror No. 15's injection into its deliberations of extraneous evidence. Fulton also failed to show that his purported new evidence was adequately material evidence such that, with that juror's testimony, a reasonable probability existed that he would have obtained a different outcome at his motion for new trial. As the district court concluded, there was no such probability because Fulton failed to show that the misconduct tainted the other jurors' deliberations.

Fulton compares his situation to that of the movant in *Crawford v. State*, No. 98,064, 2008 WL 4222521 (Kan. App. 2008) (unpublished opinion). Crawford is clearly distinguishable. In *Crawford*, the district court summarily dismissed Crawford's K.S.A. 60-1507 motion because Crawford had already raised juror misconduct on direct appeal. However, based on Crawford's allegations of newly discovered evidence of jury tampering (a juror provided an affidavit claiming that threats from the family of Crawford's victim had caused her to vote to convict Crawford), our court reversed the dismissal. The panel held that res judicata did not bar the new claim because the juror tampering at issue in the K.S.A. 60-1507 motion was of a different character than the juror misconduct considered in the direct appeal. Because Crawford and his counsel apparently were unaware of the newly discovered alleged jury tampering evidence at the time of trial and direct appeal, the panel held that Crawford had sufficiently alleged exceptional circumstances to warrant an evidentiary hearing on his motion. 2008 WL 4222521, at *3-4.

Here Fulton did in fact receive an evidentiary hearing to address his newly discovered evidence claim regarding juror misconduct. And, contrary to *Crawford*, the district court here held that "[Fulton] has not shown that the testimony of [Juror No. 15]

18

could not have been produced before [Fulton] filed his first K.S.A. 60-1507 motion with reasonable diligence." See *Cook*, 281 Kan. at 992.

The district court did not err when it determined that Fulton failed to demonstrate circumstances justifying his failure to pursue his ineffective assistance of counsel claim in his prior motion.

*Appellate counsel*

Fulton contends that he received ineffective assistance from his direct appeal counsel. He claims counsel failed to include a claim of ineffective assistance of trial counsel based on trial counsel's failure to recall the jury for the motion for a new trial. He also claims that direct appeal counsel should have sought a remand for a rehearing on the motion for a new trial so that the jurors could have been recalled.

The district court rejected these arguments, pointing out that Fulton did not call appellate counsel as a witness. Thus, counsel did not have an opportunity to explain counsel's actions or inactions. See *Pabst v. State*, 287 Kan. 1, Syl. ¶ 4, 192 P.3d 630 (2008). We also note that Fulton did not offer any testimony that concerned, let alone criticized, appellate counsel's performance.

We have reviewed the record. It contains no evidence that concerns the quality of appellate counsel's services other than the documents and transcripts in the record and the Supreme Court's opinion in *Fulton*. Otherwise, we have only Fulton's arguments. Lacking any other evidence or expert opinion, we hold that Fulton has failed to prove that appellate counsel's performance was constitutionally deficient under *Strickland*. The district court did not err when it denied Fulton relief on this claim.

Affirmed.