NOT DESIGNATED FOR PUBLICATION

No. 118,027

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LYLE C. SANDERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed August 10, 2018. Affirmed.

*Lyle C. Sanders*, appellant pro se.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., STANDRIDGE, J., and RYAN W. ROSAUER, District Judge, assigned.

LEBEN, J.: Lyle Sanders appeals the district court's denial of his motion for habeas corpus relief under K.S.A. 2017 Supp. 60-1507, the statute governing habeas claims by inmates. But denial of the motion was appropriate for three reasons: his motion was untimely because it came well after a statutory deadline; his motion was successive, meaning he'd already brought a challenge to his conviction under K.S.A. 60-1507; and one of his claims was barred by the doctrine of res judicata because an issue he pursued in this habeas claim had been raised by him—unsuccessfully—in earlier proceedings.

1

Sanders claims he's entitled to a hearing under two United States Supreme Court cases—*Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), and *Murray v. Carrier*, 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)—that he urges provide a "gateway" around any state-court procedural hurdles. But the standards set out in those cases are consistent with the provisions of our Kansas habeas statute, K.S.A. 2017 Supp. 60-1507, and Sanders has not met those standards. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

To set the stage for our discussion of Sanders' current claims, we first need to review the proceedings that have taken place since he was charged with first-degree murder and an aggravated-weapons violation arising out of the 1993 killing of Latonya Edmond in Wichita. A jury convicted Sanders of both charges in 1994, but the Kansas Supreme Court reversed the convictions on appeal because the trial court had not instructed the jury on the lesser-included offense of second-degree murder. See *State v. Sanders*, 258 Kan. 409, 416, 904 P.2d 951 (1995). On retrial, a jury again found Sanders guilty and the court sentenced him to three life terms for murder and a term of one to five years for the weapons violation, all to run consecutive to each other. Sanders appealed, but the Kansas Supreme Court affirmed the convictions in *State v. Sanders*, 263 Kan. 317, 949 P.2d 1084 (1997). That concluded the initial step in a criminal defendant's ability to challenge his or her convictions—the direct appeal.

After criminal defendants in Kansas have exhausted all direct appeals, they can also bring challenges to a conviction in habeas corpus proceedings. Procedurally, that's done by motion under K.S.A. 2017 Supp. 60-1507. Since Sanders' present claim was denied in part because he had brought previous habeas claims, we need to briefly review each of his attempts to get habeas relief.

2

Sanders first did so in March 1998. That motion isn't in the current record on appeal, but we affirmed the district court's denial of the motion in *Sanders v. State*, 26 Kan. App. 2d 826, 830, 995 P.2d 397 (1999). According to our opinion, Sanders had alleged that he had received ineffective assistance of trial and appellate counsel and that the district court had erred in admitting certain DNA evidence against him. *Sanders*, 26 Kan. App. 2d at 827-30; See *Sanders v. State*, No. 92,593, 2005 WL 2076504, at *1 (Kan. App. 2005) (unpublished opinion).

Sanders filed his second habeas motion in June 2003. He raised many of the same issues he had raised in earlier motions, as well as claims of prosecutorial misconduct and possible perjured testimony from witnesses who testified somewhat differently in the second trial than they had in the first. The district court denied the motion, and we affirmed that judgment. 2005 WL 2076504, at *4.

Sanders filed his third habeas motion—the one involved in this appeal—in August 2016. Sanders claimed that the district court had erred at trial by admitting contaminated DNA evidence and by limiting his cross-examination of a lead investigator. Sanders also claimed that the prosecutor had committed misconduct by referring to O.J. Simpson's trial and by eliciting perjured testimony; that the State had violated his due-process rights when it didn't set aside a portion of a blood sample for independent testing; and that his trial and appellate counsel were ineffective. Sanders also filed a separate document (his "Motion to Proffer Evidence") listing witnesses who, based on their jury-trial testimony, Sanders thought supported his claims.

The State requested several continuances to respond to Sanders' motion but never did. The district court then considered the motion without a response and denied it without holding a hearing. The court held that the motion was successive, not his first attempt, and that Sanders had failed to establish the exceptional circumstances needed to get review of a successive habeas request. The court also held that Sanders was barred

3

from raising issues he had raised, or could have raised, on direct appeal or in previous habeas motions. Sanders moved to reconsider, which the court also denied.

Sanders then appealed to our court.

ANALYSIS

Sanders first claims that the district court misconstrued his motion as a habeas claim under K.S.A. 60-1507 and incorrectly applied state law rather than federal caselaw. Sanders argues that under two United States Supreme Court cases—*Schlup*, 513 U.S. 298, and *Carrier*, 477 U.S. 478—a claim of actual innocence provides a "gateway" around any state procedural hurdles that would otherwise apply.

Our consideration of Sanders' argument is made easier by a recent Kansas Supreme Court decision, *Beauclair v. State*, 308 Kan. 284, 419 P.3d 1180 (2018). As the court noted in *Beauclair*, the *Schlup* and *Carrier* cases arose in federal habeas corpus proceedings. Although the federal and state statutory provisions are different, both differentiate between procedural and substantive claims. At the first—procedural—stage, the inmate must show a right to be heard. Often, for example, there are statutory time limits that have expired. An inmate may be able to get around that procedural time limit with a claim of actual innocence. But that simply means the court will hear the overall claim on its merits, not reject it solely for procedural reasons. The defendant would still have to meet whatever standard is applied to determine whether substantive relief, like a new trial, will be granted. Once again, a claim of actual innocence may be one of the bases considered for substantive relief. See *Beauclair*, 308 Kan. at 297-302.

In *Beauclair*, as in Sanders' case, the actual-innocence claim was asserted "as a gateway to defeat the procedural time bar that otherwise prohibit[ed] reaching the merits

4

of his substantive claims." 308 Kan. 296. We will discuss what Sanders had to show to get around those procedural hurdles as we discuss each of them separately.

As an overall matter, we must determine whether Sanders' claims warranted a substantive hearing on the merits of his claims. To get that substantive hearing, he first had to overcome the procedural hurdles we'll soon discuss. In determining how to proceed, the district court had three options.

First, it may review the case file on its own. If the court concludes from that review that the case records conclusively show the inmate isn't entitled to any relief, the court can dismiss the motion without a hearing. Second, the court might decide based on its initial review that there's some potentially valid issue that it would like to have the parties address. In that case, the court can hold a preliminary nonevidentiary hearing. Third, if the court decides based on its review (with or without an initial nonevidentiary hearing) that there is a potentially meritorious issue on which evidence needs to be heard, the court must set the case for an evidentiary hearing. *Sola-Morales v. State*, 300 Kan. 875, Syl. ¶ 1, 335 P.3d 1162 (2014). In deciding whether an evidentiary hearing must be held, the court generally must accept the factual allegations set out in the motion as true. See *Hogue v. Bruce*, 279 Kan. 848, Syl. ¶ 1, 113 P.3d 234 (2005). But the factual allegations must be specific, not mere conclusions. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018).

Here, the district court chose the first option and decided that Sanders was not entitled to a substantive review of the merits of his claim because procedural hurdles prevented the court from considering them. When the district court denies relief based on a review of the existing files and without taking new testimony, we conduct an independent review of the motion and case file to determine whether they do conclusively show that the prisoner isn't entitled to relief. *Sola-Morales,* 300 Kan. at 881.

5

After our independent review of the record, we agree with the district court that Sanders cannot overcome the procedural hurdles that prevent consideration of his substantive claims. The first procedural hurdle is a one-year time limit provided by statute in K.S.A. 2017 Supp. 60-1507(f). Under that provision, a defendant must make any habeas claims within one year of the termination of appellate jurisdiction over his direct appeal unless an extension of that time limit is needed "to prevent a manifest injustice." K.S.A. 2017 Supp. 60-1507(f)(2). That one-year deadline was adopted effective July 1, 2003, but the statute didn't explicitly say how it applied to convictions that had become final before its effective date. If applied literally to cases in which appeals had long ago been lost, the deadline for someone like Sanders (whose direct appeal had concluded in December 1997) might have already expired before the effective date of the new time limit. But the Kansas Supreme Court held that inmates whose convictions became final before July 1, 2003, had until one year after that date to file their habeas claim. *Tolen v. State*, 285 Kan. 672, Syl.¶ 4, 176 P.3d 170 (2008). That gave Sanders until June 30, 2004, but he didn't file this motion until August 2016—12 years too late. So Sanders had to show that consideration of his untimely motion was necessary to prevent manifest injustice.

We now have statutory guidance of what Sanders had to show. Before July 1, 2016, the Legislature had not defined what it meant by "manifest injustice." See *Hayes v. State*, 307 Kan. 9, 13-14, 404 P.3d 676 (2017). But during the 2016 legislative session—a month before Sanders filed his motion—the Kansas Legislature amended K.S.A. 60-1507(f)(2) to more precisely define "manifest injustice." See L. 2016, ch. 58, § 2 (effective July 1, 2016). The statute now lets an inmate satisfy the manifest-injustice standard either with a colorable claim of actual innocence or some good reason why the motion wasn't filed sooner:

> "For purposes of finding manifest injustice under this section, the court's inquiry
> shall be limited to determining why the prisoner failed to file the motion within the one-

year time limitation or whether the prisoner makes *a colorable claim of actual innocence*. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." (Emphasis added.) K.S.A. 2017 Supp. 60-1507(f)(2)(A).

Sanders doesn't try to explain the reason for his 12-year delay. But he does claim that he is innocent.

For an inmate to establish "a colorable claim of innocence," the statute requires that he or she show that "it is more likely than not that no reasonable juror would have convicted the prisoner *in light of new evidence*." (Emphasis added.) K.S.A. 2017 Supp. 60-1507(f)(2)(A). As our Supreme Court pointed out in its recent *Beauclair* opinion, that statutory standard "mirrors" the federal caselaw standard Sanders has cited from the United States Supreme Court's opinion in *Carrier*. See *Beauclair*, 308 Kan. at 301. That *Carrier* standard was relied upon in *Schlup*, the other United States Supreme Court case Sanders cited. After noting the similarity between the language of our statute and the federal standard, our Supreme Court "adopt[ed] the *Carrier* standard" when considering an actual-innocence claim as a gateway around the procedural bar of the one-year time limit in K.S.A. 60-1507(f). 308 Kan. at 301.

Under that standard, an inmate seeking habeas relief "is entitled to consideration of the merits of the motion if the claim of actual innocence meets the standard outlined" in *Carrier*. 308 Kan. at 284. So we must determine whether it is more likely than not that no reasonable juror would have convicted Sanders in light of new evidence. And because the question jurors answer in a criminal trial is whether a defendant is guilty beyond a reasonable doubt, the inmate's "burden at the gateway stage is merely to demonstrate 'that more likely than not any reasonable juror would have reasonable doubt.'" *Beauclair*, 308 Kan. at 301 (quoting *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 [2006] [discussing the *Carrier* standard]).

7

Rather than point to new evidence in his motion, though, Sanders merely challenges the reliability of some of the evidence presented against him at trial, claiming that the State failed to establish the chain of custody of the DNA sample and that the testing laboratory didn't follow proper procedures. At least in this case, he hasn't done enough to meet the standard set out in K.S.A. 2017 Supp. 60-1507(f), *Beauclair*, and *Carrier*.

Sanders argues on appeal that he did present "[new] and reliable evidence," pointing to his "Motion to Proffer Evidence." But Sanders' motion merely reiterated evidence that had been presented at trial. So while Sanders says he's innocent, he hasn't presented *new evidence* to support that claim. And without new evidence, Sanders hasn't brought a "colorable claim of actual innocence." Sanders therefore failed to establish manifest injustice, a requirement for substantive consideration of his untimely motion.

The second procedural hurdle Sanders faces is that his motion is "successive," meaning he's brought habeas corpus proceedings before. Under the Kansas habeas statute, courts need not consider more than one habeas motion for similar relief. K.S.A. 60-1507(c); *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013). Because a person bringing a habeas motion is presumed to have listed all grounds for relief, a court doesn't need to consider a later motion "in the absence of a showing of circumstances justifying the original failure to list a ground." *Trotter*, 296 Kan. 898, Syl. ¶ 2.

The circumstances Sanders had to show are called "exceptional circumstances" under a Kansas Supreme Court rule. See Supreme Court Rule 183(c)(3) (2018 Kan. S. Ct. R. 223). Exceptional circumstances include "unusual events or intervening changes in the law which prevent[ed] a movant from reasonably being able to raise all of the trial errors in the first postconviction proceeding." *State v. Kelly*, 291 Kan. 868, Syl. ¶ 2, 248 P.3d 1282 (2011). In *Beauclair*, the Kansas Supreme Court also concluded that a colorable

claim of actual innocence based on new evidence could serve as an "unusual event" sufficient to provide a gateway past this procedural hurdle. 308 Kan. 284, Syl. ¶ 2. But we've already explained that Sanders didn't present a colorable claim of actual innocence based on new evidence. And Sanders doesn't cite any other unusual events or intervening changes in the law that prevented him from raising his claims in his previous postconviction proceedings. So the district court wasn't required to consider Sanders' successive motion.

Finally, "the doctrine of res judicata applies to a K.S.A. 60-1507 movant who attempts to raise issues [that] have previously been resolved by a final appellate court order in his or her criminal proceeding." *Woods v. State*, 52 Kan. App. 2d 958, Syl. ¶ 1, 379 P.3d 1134 (2016). Sanders argued unsuccessfully in his direct appeal that the district court had erred by limiting his cross-examination of a lead investigator. See *Sanders*, 263 Kan. at 320-21. The doctrine of res judicata bars Sanders from relitigating that claim in this appeal.

Our review of Sanders' motion and case file conclusively shows that he wasn't entitled to relief. We therefore affirm the district court's judgment.