NOT DESIGNATED FOR PUBLICATION

No. 115,140

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LUIS ROJAS-MARCELENO,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed March 31, 2017.
Affirmed.


*Gerald E. Wells*, of Jerry Wells Attorney-at-Law, of Lawrence, for appellant.


*Amy L. Aranda*, first assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., ATCHESON, J., and STUTZMAN, S.J.


ATCHESON, J.: Luis Rojas-Marceleno appeals the Lyon County District Court's denial of his habeas corpus motion challenging multiple jury convictions resulting from his repeated sexual abuse of C.N.V., his 13-year-old niece. Rojas-Marceleno contends the district court erred both in finding that his criminal defense lawyer provided constitutionally adequate representation despite her inability to introduce a specific cell phone bill as evidence—a failure he says deprived him of a fair trial—and in finding that additional deficiencies he outlined in a motion to reconsider were untimely. We find no error in the district court's conclusions and, therefore, affirm the denial of relief.

1

During a 7-day trial in 2009, a jury convicted Rojas-Marceleno of three counts of aggravated criminal sodomy, one count of rape, and one count of aggravated indecent solicitation of a child. The district court dismissed some other counts during trial, and the jury acquitted Rojas-Marceleno of still other counts. All of the charges arose from a series of sexual encounters between Rojas-Marceleno and his niece. The district court imposed two consecutive life sentences without parole for 25 years, concurrent life sentences, and a consecutive term of 57 months on the aggravated indecent solicitation conviction. The Kansas Supreme Court affirmed the convictions and sentences on direct appeal. *State v. Rojas-Marceleno*, 295 Kan. 525, 285 P.3d 361 (2012).

Rojas-Marceleno timely filed a motion in September 2013 collaterally attacking the judgment, as permitted in K.S.A. 60-1507. The district court appointed a lawyer to represent Rojas-Marceleno. The lawyer filed an amended 60-1507 motion. In September 2014, the district court dismissed all but one of the claims without hearing evidence. The dismissed claims do not figure in this appeal. The district court ordered an evidentiary hearing on the remaining claim that Rojas-Marceleno's trial counsel was constitutionally ineffective for failing to admit the cell phone bill. In early December, Rojas-Marceleno filed a pro se motion for reconsideration in which he also raised two new claims. The district court held an evidentiary hearing on December 18 on the claim about the cell phone bill.

On January 5, 2015, the district court issued a memorandum decision denying Rojas-Marceleno relief on that claim, dismissing the additional claims made in the motion for reconsideration as untimely, and otherwise denying reconsideration. Rojas-Marceleno has appealed.

2

On appeal, Rojas-Marceleno argues the district court erred in ruling on the cell phone bill and treating the new claims as time barred. We take up those two points in that order.

The cell phone bill bears on a sexual encounter between Rojas-Marceleno and C.N.V. on September 14, 2008. C.N.V. and her younger brother were at the home of Rojas-Marceleno and his wife Jamie. During part of that time, Jamie was out at a birthday party and running errands. She testified she loaned her cell phone to C.N.V. At trial, C.N.V. testified that Rojas-Marceleno had sex with her while Jamie was gone and she later used the cell phone to talk with her boyfriend. C.N.V. testified that Jamie left late in the afternoon. Jamie told the jurors she left the house about 6:20 p.m. and returned about 7 p.m. At trial, Rojas-Marceleno's lawyer attempted to introduce as evidence two pages of the monthly bill for Jamie's cell phone showing when calls were made on September 14 and their duration. The district court sustained the State's objection to the document because the lawyer had not offered the entire bill. The lawyer never successfully admitted the cell phone bill for the jurors' consideration.

The cell phone bill, made part of the record in this case, shows calls placed throughout the time Jamie said she was gone. The reported length of several of the calls suggests extended conversations. The bill also shows two lengthy telephone calls after Jamie said she returned home to a number that also had been called while she was gone. Rojas-Marceleno contends the jurors would have doubted C.N.V.'s testimony had they been given the cell phone bill to review. According to Rojas-Marceleno, the bill shows that he and C.N.V. could not have had sex when Jamie was gone because the phone was, more or less, continually in use during that time.

He contends his lawyer's inability to admit the bill as evidence amounted to sufficiently inadequate legal representation to violate his right to counsel protected in the Sixth Amendment to the United States Constitution.

3

We pause to outline relevant habeas corpus principles. Upon receiving a 60-1507 motion, a district court has three options. The district court can dismiss the motion after reviewing it and the record in the criminal case. *Bellamy v. State*, 285 Kan. 346, 353, 172 P.3d 10 (2007). But when "a motion . . . presents a substantial question of law or triable issue of fact, the court shall appoint" a lawyer to represent the movant. Supreme Court Rule 183(i) (2017 Kan. S. Ct. R. 224). After appointing a lawyer, the district court then has two choices. It may conduct a preliminary hearing during which lawyers for the State and for the movant present legal argument and otherwise address whether the circumstances call for a full evidentiary hearing. *Bellamy*, 285 Kan. at 354. Or it may bypass the preliminary hearing and hold a full evidentiary hearing. See 285 Kan. at 353-54.

As to Rojas-Marceleno's contention about the cell phone bill, the district court held an evidentiary hearing. Rojas-Marceleno testified at the hearing, but his criminal defense lawyer did not. We consider the district court's rulings using a bifurcated standard that accords deference to findings of fact supported by substantial evidence and reserves unlimited review of legal conclusions. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015); *Bellamy*, 285 Kan. at 355.

Constitutionally inadequate legal representation may present an exceptional circumstance warranting relief to a convicted defendant seeking habeas corpus relief under K.S.A. 60-1507. See *Bledsoe v. State*, 283 Kan. 81, 88-89, 150 P.3d 868 (2007). To satisfy that standard, the movant must show his or her representation in the direct criminal case both fell below an objective standard of reasonableness and resulted in legal prejudice, meaning there probably would have been a different outcome had the representation been adequate. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see *Chamberlain v. State*, 236 Kan. 650, Syl. ¶¶ 3-4, 694 P.2d 468 (1985) (adopting and stating *Strickland* test for ineffective assistance);

4

see also *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015) (restating *Strickland* test and citing *Chamberlain* in assessing constitutionally inadequate legal representation in context of new trial motion). As the United States Supreme Court and the Kansas Supreme Court have explained, review of the representation should be deferential and hindsight criticism tempered lest the evaluation of a lawyer's performance be unduly colored by lack of success notwithstanding demonstrable competence. See *Strickland*, 466 U.S. at 689-90; *Holmes v. State*, 292 Kan. 271, 275, 252 P.3d 573 (2011). Rarely should counsel's representation be treated as substandard when he or she investigates the client's circumstances and then makes a deliberate strategic choice among multiple options. *Strickland*, 466 U.S. at 690-91.

In general, the courts look at a lawyer's overall performance in representing a criminal defendant in determining whether the Sixth Amendment right to counsel has been satisfied, meaning that a minor mistake or even a number of minor mistakes do not breach that duty. See *Harrington v. Richter*, 562 U.S. 86, 111, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Bland v. Hardy*, 672 F.3d 445, 450 (7th Cir. 2012) ("[T]he question under *Strickland* is not whether the lawyer made a mistake, even a serious one; it is whether the lawyer's *overall* performance was professionally competent."). But a single error causing sufficiently substantial legal harm to the defendant to call into question an adverse outcome at trial or on appeal will suffice. See *Miller v. State*, 298 Kan. 921, 938-39, 318 P.3d 155 (2014).

A district court considering a 60-1507 motion may not be able to readily assess the strategic considerations bearing on decisions the movant's criminal defense lawyer made in handling the case without testimony from that lawyer. But the district court or a reviewing appellate court can deny relief when the movant fails to show the lawyer's errors had a material impact on the outcome of the criminal case even if they amounted to constitutionally substandard representation. *Strickland*, 466 U.S. at 697 ("If it is easier to

5

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."); *Sola-Morales v. State*, 300 Kan. 875, 886, 335 P.3d 1162 (2014). In other words, bad lawyering alone does not warrant relief in a 60-1507 proceeding.

We follow that approach on appeal here. The record does not suggest some readily discernable strategy in the decision of Rojas-Marceleno's criminal defense lawyer to give up on trying to admit the cell phone bill as evidence. The lawyer obviously thought the document worthy of the jurors' consideration in deciding the charges against Rojas-Marceleno, since she went to the effort to lay a foundation for it and to offer it as an exhibit, albeit unsuccessfully. If there was a sound strategy in the works, it begs for an explanation from the lawyer somewhere in this 60-1507 proceeding. The omission seems conspicuous from our vantage point. We, therefore, assume without deciding that the failure to admit the cell phone bill in and of itself caused the representation to fall below the Sixth Amendment requirement of adequacy.

Rojas-Marceleno's argument, however, founders on prejudice. At best, the cell phone bill would suggest, perhaps strongly, that no sexual encounter between Rojas-Marceleno and C.N.V. took place from about 6:30 p.m. to 7:10 p.m., when a series of calls were placed or received. But that alone doesn't really exculpate Rojas-Marceleno—he and C.N.V. could have had sex earlier, as C.N.V. indicated in her testimony. The jury could have drawn an exculpatory inference from the cell phone bill *only if* Jamie accurately reported the precise time period she was gone from the house. But a jury easily could have believed Jamie was honestly mistaken. Had Jamie left even a short time earlier than she recalled, the encounter between Rojas-Marceleno and C.N.V. could have occurred as C.N.V. testified it did. And Jamie, as Rojas-Marceleno's wife, could have been viewed as an interested witness with an incentive to consciously shade her testimony to his advantage in testifying about the chronology of events on September 14.

6

In short, Rojas-Marceleno now attributes far more significance to the cell phone bill than it actually would have had during the trial, inaccurately transforming it from a piece of evidence with contingent or potential value into something conclusively proving his innocence on at least one of the charges. The cell phone bill would have been a mere sliver added to an already detailed mosaic presented to the jurors during the trial. Moreover, that sliver would have been somewhat ambiguous—rather than definitive—in its appearance. Accordingly, we cannot say it would have probably or even possibly prompted the jury to come to a different result. Rojas-Marceleno cannot show the degree of prejudice required for habeas corpus relief on this claim.

For his second point on appeal, Rojas-Marceleno argues the district court improperly rejected as untimely the two new claims he raised in his motion to reconsider. As provided in K.S.A. 60-1507(f)(1), a motion must be filed within 1 year of the final disposition of the direct criminal case. Rojas-Marceleno's 60-1507 motion was timely, but the claims in the motion to reconsider were asserted well over a year after the disposition of the criminal case. Rojas-Marceleno does not argue that his new claims relate back to the claims in his original motion, which would make them timely. See *Thompson v. State*, 293 Kan. 704, Syl. ¶ 3, 270 P.3d 1089 (2011); *Burden v. State*, No. 114,738, 2016 WL 7324420, at *5 (Kan. App. 2016) (unpublished opinion). Rather, Rojas-Marceleno relies on a statutory exception to the time limitation to prevent manifest injustice. See K.S.A. 60-1507(f)(2)(A).

The Kansas Legislature modified the manifest injustice exception, effective July 1, 2016, to more specifically identify what may be considered. See K.S.A. 2016 Supp. 60-1507(f). The amendment has been deemed procedural and, therefore, applicable to pending 60-1507 proceedings. See *Olga v. State*, No. 115,334, 2017 WL 840296 at *2-3 (Kan. App. 2017) (unpublished opinion). That seems reasonable insofar as the Kansas Supreme Court characterizes statutes of limitation as being procedural rather than substantive. See *State v. Spencer Gifts*, 304 Kan. 755, 769, 374 P.3d 680 (2016) (statutes

7

of limitation deemed procedural, so legislative changes apply retroactively, *i.e.*, to pending cases); *Thompson*, 293 Kan. at 711 (characterizing K.S.A. 60-1507[f] as a "statute of limitations"). An exception to the time limitation, therefore, similarly ought to be procedural.

Under the governing language of K.S.A. 60-1507(f)(2)(A), a movant may escape the 1-year time bar if the reason why he or she failed to file within that period demonstrates "manifest injustice." The term "manifest injustice" has not been statutorily defined for habeas corpus proceedings but is generally understood to entail something obviously unfair or shocking to the conscience. *State v. Holt*, 298 Kan. 469, 480, 313 P.3d 826 (2013); *State v. Kelly*, 291 Kan. 868, 873, 248 P.3d 1282 (2011).

Rojas-Marceleno posits that he was unable to raise the new issues in a timely fashion because he had limited access to the prison law library and he did not receive the necessary transcripts from the criminal case until August 20, 2013. We fail to see manifest injustice based on those assertions. On appeal, Rojas-Marceleno does not detail the claims or explain how he was impeded from asserting them. If he received the transcripts in mid-August 2013, he had them for almost 2 months before the 1-year deadline in K.S.A. 60-1507(f) expired. Likewise, he doesn't outline the research he had to do to advance the claims, especially after the district court appointed a lawyer to represent him in the 60-1507 proceedings.

The new claims assert that Rojas-Marceleno's criminal defense lawyer was constitutionally ineffective for failing to call C.N.V.'s boyfriend and several "alibi" witnesses to testify during the trial. We fail to see how supposedly limited access to the transcripts would have inhibited Rojas-Marceleno from raising those claims. They turn on what the trial lawyer *did not do* during the trial, so there would be little or nothing in the transcripts. The potential usefulness of the witnesses turns on what they would have said at trial. And that amounts to an assessment of factual considerations, not legal ones.

8

So limited library time wouldn't appear to be a significant impediment to raising the claims.

Based on what Rojas-Marceleno filed on his own in the district court, he submits C.N.V.'s then-boyfriend would have testified he and C.N.V. had a sexually active relationship. At trial, C.N.V. acknowledged as much, contradicting earlier statements she had made to law enforcement officers and others involved in the investigation of Rojas-Marceleno. Her boyfriend's testimony would have added little or nothing in that respect to what the jurors heard from C.N.V. Rojas-Marceleno also submits C.N.V.'s boyfriend was never charged with a crime for having sexual relations with her, notwithstanding her age. Rojas-Marceleno says that raises the specter of selective prosecution. Even assuming Rojas-Marceleno's assertions to be factually accurate, a selective prosecution such as he outlines does not amount to a legal defense, so the jury would not have been informed one way or the other about charges related to C.N.V.'s boyfriend. See *State v. Gant*, 288 76, Syl. ¶ 10, 201 P.3d 673 (2009) (grounds for selective prosecution defense), *abrogated on other grounds by State v. Sampson*, 297 Kan. 288, 301 P.3d 276 (2013); *State v. Franks*, No. 100,227, 2009 WL 2762463, at *2 (Kan. App. 2009) (unpublished opinion).

The other witnesses actually bore on C.N.V.'s credibility rather than on an alibi for Rojas-Marceleno. According to Rojas-Marceleno, teachers or administrators from the school C.N.V. attended would have testified that she was not at school on November 14, 2007. C.N.W. testified at trial to a sexual encounter with Rojas-Marceleno on that day—a day she says she went to school. Again, assuming Rojas-Marceleno's representation to be correct, the school employees would have impeached C.N.V. as to the particular day related to one of the incidents. But that sort of discrepancy would not necessarily portray C.N.V. as a liar, so much as a victim confused about a specific date among many that Rojas-Marceleno sexually took advantage of her.

9

Nothing about the circumstances of the new claims indicates manifest injustice flowing from the district court's decision finding them time barred.

Having considered Rojas-Marceleno's points, we find the district court properly denied the 60-1507 motion.

Affirmed.